IN RE METROPOLITAN PARK COMMISSIONERS, petitioners.

Suffolk.    May 15, 1911. — June 21, 1911.

Present: MORTON, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Metropolitan Parks District. Commissioners to apportion Expenses of Metropolitan Parks District. Constitutional Law. Charles River Basin. Craigie Bridge. Statute, Construction. Bridge.*

The commissioners to apportion the expenses of the metropolitan parks district, appointed under St. 1899, c. 419, as amended by St. 1903, c. 465, § 9, and St. 1906, c. 402, § 2, in regard to the apportionment of the expenses of the Charles River basin, formed by a dam substantially on the site of Craigie Bridge, and of the removal of Craigie Bridge and the construction of a suitable bridge in place thereof, like other similar commissioners, are clothed with a wide judicial discretion as to the considerations which should guide them in making the apportionment, and, although their report must be passed upon by the court, the court to which it is submitted will be slow to disturb an award, except in the event of its appearing to be extravagant and unreasonable or based on an unsound interpretation of the statutes or an erroneous view of the law, and, so far as the commissioners proceed within their powers, act reasonably and violate no constitutional right, their determination will not be disturbed.

The limits of the constitutional power of the Legislature to apportion the expense of a public improvement among the cities and towns benefited thereby have never been determined, but it can be said that, if the principles applied in the assessment of the municipalities would be constitutional as applied to individuals, there can be no just ground for complaint.

The commissioners to apportion the expenses of the metropolitan parks district, appointed under St. 1899, c. 419, as amended by St. 1903, c. 465, § 9, and St. 1906, c. 402, § 2, in regard to the expenses of the Charles River basin, formed by a dam substantially on the site of Craigie Bridge, and of the removal of Craigie Bridge and the construction of a suitable bridge in place thereof, are not required by the terms of the last named statute to apportion the expenses of the Charles River basin in the same manner that is adopted in apportioning the general metropolitan parks expenses.

The commissioners to apportion the expenses of the metropolitan parks district, appointed under St. 1899, c. 419, as amended by St. 1903, c. 465, § 9, and St. 1906, c. 402, § 2, in regard to the apportionment of the expenses of the Charles River basin, formed by a dam substantially on the site of Craigie Bridge, and of the removal of Craigie Bridge and the construction of a suitable bridge in

place thereof, properly may include as a part of " the cost of the removal of Craigie Bridge and the construction of a suitable bridge in place thereof " the expense of a temporary bridge used by the public during the period of construction, it being a fair implication from the tenor of the statute that the expense of this temporary structure should be borne in the same way as the expense for the permanent accommodation of the travelling public.

RUGG, J.   This is an appeal by the city of Boston and by the city of Cambridge from a decree * accepting the award of commissioners appointed to determine the apportionment among the cities and towns constituting the Metropolitan Parks District of the annual payments required to reimburse the Commonwealth for the cost and maintenance of the metropolitan parks and the Charles River basin.   In substance, the ground of objection by the city of Boston is that the commissioners have not proceeded according to the terms of the statutes in apportioning the annual contributions toward the cost and toward the maintenance of the Charles River basin, while the city of Cambridge objects upon the additional ground that they have wrongfully apportioned the expense of a temporary bridge.   These objections depend upon certain statutes, which it becomes necessary to examine in detail.

The commissioners were required by St. 1899, c. 419, §§ 1, 2, to " in such manner as they deem just and equitable, determine and make award of the proportions in which each of the cities and towns of said district shall annually pay money into the treasury of the Commonwealth . . . to provide the amount . . . estimated . . . to meet the interest and sinking fund requirements of the appropriations and loans authorized " for the general metropolitan park system, (St. 1893, c. 407,) for the construction of roadways and boulevards (St. 1894, c. 288) for the Revere beach reservation (St. 1895, c. 305) and for the Nantasket beach reservation (St. 1899, c. 464, § 4) " and the amount required to meet the expenses . . . of said board of metropolitan park commissioners, and of the care, maintenance and operation . . . of the parks, reservations, boulevards and other works acquired, cared for or controlled by said board. . . . "   St. 1903, c. 465, created the Charles River basin commission and charged it with the duty of constructing a dam near the mouth of the

* By *Hammond*, J.

Charles River and other extensive public improvements.   Upon completion, this public improvement was to be placed under the control and management of the metropolitan park commission. Section 9 of this act, as amended by St. 1906, c. 402, § 2, imposed upon the commissioners, whose report is here in question, duties as to the expenses incurred by the Charles River basin commission and the maintenance of the Charles River basin in this language: " The commissioners . . . in apportioning the expenses of maintaining the metropolitan park system shall include as part thereof the expense of maintenance " of the Charles River basin, "shall also determine as they shall deem just and equitable what portion of the total amount expended for construction " of the Charles River basin " shall be apportioned to the cities of Boston and Cambridge as the cost of the removal of Craigie Bridge and the construction of a suitable bridge in place thereof, and the remainder shall be considered and treated as part of the cost of construction of the metropolitan park system ; and shall also determine as they shall deem just and equitable, what portion of the total amount expended for the cost of construction of the marginal conduit on the south side of the basin and of the embankment and park, provided for by this act, shall be apportioned to the city of Boston as the cost of the construction of said embankment and park, and what portion shall be fixed as the cost of said marginal conduit.   The cost of the construction of said embankment and park, as so apportioned, shall be repaid to the Commonwealth by the city of Boston. . . . "

The commissioners made five different tables of apportionment.   They apportioned, first, the cost and maintenance of the metropolitan parks exclusive of the Nantasket Beach reservation and the Charles River basin, according to percentages made up of a combination of valuation and population and a partial exclusion of certain towns located upon the fringe of the district; second, the expense and maintenance of boulevards according to percentages based upon a combination of valuation and length of boulevard in the several municipalities; third, the Nantasket Beach reservation expense and maintenance upon all the cities and towns, including Cohasset, by a percentage based upon valuation; fourth, the expense of the construction of the Charles River basin (after deducting the cost of Craigie Bridge

and the embankment and park as required by the statute) by assessing fifty per cent of the cost of dredging and other improvements in Broad and Lechmere canals upon the city of Cambridge on the ground that they found that that particular part of the Charles River basin work resulted in special and peculiar benefit to the city of Cambridge, by assessing sixteen and two thirds per cent of the amount expended for the Boston marginal conduit upon the city of Boston and the same percentage of the expense of the Cambridge marginal conduit upon the city of Cambridge on the ground that they found that the construction of these two conduits had conferred a special advantage upon the city in which each was located, and by assessing the balance, after these deductions, upon the cities and towns of the metropolitan parks district in proportion to valuation; fifth, the expense of maintaining the Charles river basin in accordance with the same principles after making the necessary deductions. The first three of these determinations are not attacked, but the broad objection is made to the findings touching the Charles River basin that, having made the deductions for the Craigie Bridge and the embankment and park required by the statute, the commissioners had no authority to apportion the balance either of expense of construction or of maintenance in any other way than that in which the general expenses of the metropolitan park system were apportioned. This contention is based upon the language of the statute above quoted, that the remainder " shall be considered and treated as part of the cost of construction of the metropolitan park system."

The governing principles by which actions and reports of commissioners like these are to be treated have been elaborated several times, and it is not necessary to go over the ground again. *Kingman, petitioner,* 153 Mass. 566; *S. C.* 156 Mass. 361. *Kingman, petitioner,* 170 Mass. 112. *Adams, petitioner,* 165 Mass. 497. *De las Casas, petitioner,* 178 Mass. 213; *S. C.* 180 Mass. 471. Summarily stated, they are that the commissioners are clothed with a wide discretion as to the considerations which should guide them in making the apportionment. It is to be made in such a manner as they may deem just and equitable. Their reasonable determination and not that of the court is to prevail. It is conceivable that cases might arise

where such a gross miscalculation or mistake as to facts or law might have been made as would require the rejection of the award.   The discretion of the commissioners is not arbitrary or dictatorial, but judicial.   The court is required to pass upon the report, and hence the general grounds of their judgment must be submitted as a part of their report, but the court would be slow to disturb an award except in the event of its appearing " extravagant and unreasonable," or based upon an unsound interpretation of the statutes, or an erroneous view of the law.   So long as they proceed within their powers, and act reasonably and violate no constitutional guaranty, their determination will not be disturbed.

The basis of the decision of these commissioners is set out at length in their report.   They have endeavored to proceed according to the principles which would govern the assessment of betterments for a public improvement upon individuals within the limitations of the constitution.   They have undertaken to ascertain the extent of the special benefits which have accrued to the cities adjacent to the Charles River basin and to make apportionment of expense in proportion to this special benefit before proceeding to make the general assessment.   This principle is equitable and rational, and nothing appears upon the face of the report to indicate that the commissioners have failed to accomplish in this regard what they set out to do.   It has not been and could not be contended successfully that this method of dividing the expense of a public improvement among cities and towns was unconstitutional.   The limits of the constitutional power of the Legislature to place such burdens upon municipalities has never been determined.   It is not necessary to fix them in this opinion.   If the same principles are applied to such subdivisions of government as could be constitutionally applied to individuals, there is no just ground for complaint. This is plainly implied by what is said in 180 Mass. at 475.

The particular ground of attack however, is that the terms of the statute do not permit the commissioners to proceed in the way in which they have proceeded, and that they have no authority to apportion the balance of the Charles River basin expenses according to any other percentage than that employed for the entire district.   The language of the statute relied upon,

when considered in connection with the other statutes governing the metropolitan parks, does not require so narrow a construction. The statutes under which the several departments of the metropolitan park system have grown up have some tendency to indicate a natural classification of its financial burdens. The parks as a whole constitute one division, although the authority by which they have been acquired is to be found in successive enactments. The expense of the Nantasket Beach reservation is imposed by the act of the Legislature upon a territorial unit differing by the addition of one town from the metropolitan parks district as constituted for other purposes. The construction and maintenance of boulevards has been found by this and preceding commissioners to stand upon a different footing as to equitable apportionment of expense, from the general park system. A special apportionment of the boulevard expense based in fact upon benefits conferred upon particular cities and towns was upheld in 180 Mass. 471. The Legislature itself has treated the Charles River basin as a somewhat distinct entity, having reposed the responsibility for its acquirement and construction in an independent commission and required it to be turned over as a finished public improvement to the care of the metropolitan park commission. The Cambridge and Boston marginal conduits and the Broad and Lechmere canals seem to distinguish it by the peculiar character of the work upon them from the general characteristics inherent in park systems. These considerations point to the conclusion that the Legislature did not intend to limit the power of the commissioners in determining how the expense of the Charles River basin should be borne to the same principle of apportionment followed as to the general metropolitan park expenses. In *De las Casas, petitioner*, 180 Mass. 471, the court approved a classification of towns upon which varying percentages of expense of the general metropolitan parks were placed. The principle in the present case is not different in its essence. Instead of classifying the municipalities of which the district is made up, the general park system is divided into the several classifications of Charles River basin, boulevards, Nantasket Beach, and the general metropolitan parks, and the burden of these several classes is apportioned in different percentages among the several municipalities ac-

cording to a principle which the commissioners assert to be found upon the evidence before them to be in part in proportion to benefits, and to be just and equitable.   There is nothing to show, and it is not contended, that this is an extravagant or unreasonable apportionment.   No objection in law appears to it as not in conformity with the statute.

The city of Cambridge objects further to the confirmation of the report on the ground that the commissioners have improperly included as a part of " the cost of the removal of the Craigie Bridge and the construction of a suitable bridge in place thereof" the expense of a temporary bridge used during the period of construction.   The main principle followed by the Legislature respecting the expenses incurred as a part of this public undertaking is that so far as they relate to the accommodation of public travel between Cambridge and Boston they should be borne by these two cities.   It is a part of the necessities of public travel that temporary provision for it be made during the work of construction.   It is a fair implication, from the tenor of the statute, that the expense of this temporary provision should be borne in the same way as the expense for the permanent accommodation of the travelling public.   Such expense bears a more intimate connection with that branch of the work required by the statute than with the general metropolitan park system.   The argument drawn from the fact that special authority for the construction of the temporary bridge was incorporated in §§ 1, 8, of c. 467, St. 1898, is of slight consequence.   Such authority probably would be inferred from the general scope of the work.   Very many statutes where presumably temporary provision for travellers was required have made no mention of it.   See for example Sts. 1900, c. 456; 1901, c. 491; 1896, c. 483; 1903, c. 441; 1903, c. 391.   No error of law appears in the award of the commissioners in this regard.

*Decree affirmed.*

The case was submitted on briefs.

*J. M. Swift,* Attorney General, *& A. Marshall,* Assistant Attorney General, for the petitioners.

*G. A. Flynn,* for the city of Boston.

*J. F. Aylward,* for the city of Cambridge.