IN RE METROPOLITAN PARK COMMISSIONERS, petitioners.

Suffolk.    January 15, 16, 1917. — May 26, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Metropolitan Parks District,* Apportionment of expense.    *Constitutional Law.*
  *Charles River Basin.    Evidence,* Presumptions and burden of proof.

Commissioners, appointed in 1915 upon a petition of the metropolitan park com-
  missioners under St. 1899, c. 419, § 1, and St. 1903, c. 465, § 9, as amended by
  St. 1906, c. 402, § 2, for the apportionment of the expenses of the metropolitan
  parks district for the next succeeding five years among the thirty-eight cities
  and towns of the district, cannot be said as a matter of law to have acted un-
  reasonably or inequitably or unconstitutionally in basing the percentages of
  their apportionment of the expense for the maintenance of the parks on
  average valuation in combination with average population.
Nor could the commissioners be said to have acted unjustly when, having decided
  that Nantasket beach reservation had become a shore resort frequented much
  more largely by the general public than by people living within the reservation,
  they apportioned the cost of construction and maintenance thereof for the next
  five year period according to the valuation of towns within the district.
Such commissioners need not set forth in their report their arithmetical computa-
  tions in detail.
It is to be presumed that, when using valuations of towns as a basis for their
  apportionments, the commissioners followed the last decennial census and the
  last valuation as established by statute.
It was *held* that the grounds of the judgment of the commission above described
  were not set forth so insufficiently in their report as to show that the constitu-
  tional rights of any of the towns of the district had been invaded.
The apportionment commission appointed in 1910 under the statutes above de-
  scribed having treated the construction of the Charles River basin and dam as
  completed and having apportioned its cost in a report which was accepted on
  appeal in *In re Metropolitan Park Commissioners, petitioners,* 209 Mass. 381, the
  commissioners appointed in 1915 cannot be said as a matter of law to have acted
  improperly in apportioning among the several municipalities in the metropolitan
  parks district according to valuation the cost of further dredging of the canals
  of the basin in order to maintain their original depth and of relaying a granite
  block pavement on the roadway of the dam made necessary by the settling of
  the former pavement, moneys so expended properly being chargeable to the ex-
  pense of maintenance and forming no part of the cost of the original construction.
The marginal conduits, constructed respectively on the Boston and the Cambridge
  sides of the Charles River basin, having been completed, form part of the
  metropolitan park system.
It was the duty of the commissioners, appointed in 1915 for the apportioning of
  the expenses of the metropolitan parks district for the next five years, to de-
  termine anew what special and peculiar benefits, if any, the cities of Boston

and Cambridge had derived, respectively, from the construction of the marginal conduits on the southerly and on the northerly sides of the Charles River basin in order to fix the percentages of further construction cost to be paid by those cities and by the other thirty-six municipalities in the district.

The commissioners of 1915, above described, having regarded "as settled" the apportionment by the commissioners of 1910 of the cost of construction of Charles River basin and dam, found, "All the remainder of the construction and all the maintenance expense we apportion among the several munici-palities according to valuation," and annexed to their report three tables only which stated the percentages of apportionment, the first being as to Nantasket beach reservation, the second as to maintenance of parks, and the third being named "All other maintenance and construction expenses." *Held*, that in "all the remainder of construction" the commission intended to include and pro-vide for any work of construction in connection with the care and maintenance of the basin which the Legislature from time to time might deem necessary during the succeeding period, and that, if no further appropriation for construc-tion should be authorized, in their judgment an apportionment in accord-ance with valuation was just and equitable for care and maintenance only; and that such action of the commissioners could not as a matter of law be said to be improper.

PETITION, filed in the Supreme Judicial Court on January 28, 1915, by the metropolitan park commissioners under St. 1899, c. 419, § 1, for the appointment of commissioners to determine and make award of the proportions in which each of the cities and towns within the metropolitan parks district annually shall pay money into the treasury of the Commonwealth beginning with January 1, 1915, and continuing until January 1 in the year in which the new award by such apportionment commissioners is made.

The commissioners appointed were Robert O. Harris, Esquire, of Bridgewater, George S. Taft, Esquire, of Worcester and James H. P. Dyer, Esquire, of Leominster. The following portions of their report are material:

"Former commissions have considered nearly all of the propo-sitions that have been presented to us, and no two of them have adopted the same plan. No former commission has had to con-sider the condition that exists to-day. Originally the plan was to furnish open places in different parts of the district and connect them with good roads. In the last ten and particularly within the last five years, the automobile has changed the character of the district and the manner of its use. Parkways and boulevards have made the whole district an open space and have become of as great if not greater importance than the reservations.

"The great and increasing use of the automobile has necessitated new, improved and more costly standards of road building, to withstand its road-destroying characteristics, and a great additional expense for maintenance. . . .

"This new means of travel and transportation has imposed upon the municipalities increased burdens of local expenditure for more costly roads, their increased cost of maintenance, and for extra and special police forces to regulate and control this traffic.  Neither parks nor boulevards are to-day merely of district concern.

"Another thing that has made changes in the character and extent of the use of the reservations and boulevards within the district is the electric street railway.  Since the creation of the Metropolitan Parks District in 1893 the development of travel by this means has become very marked.  Not only have the street railways existing at that time been improved in character of their roadbed and cars, but the speed has been greatly increased, and the extension of old roads and the building of new ones through all parts of the District have made all the reservations more available to all the people of the District than was probably foreseen or contemplated in 1893.

"The electric street car and the automobile seem to meet the needs of different portions of the population.  The boulevards themselves have largely become restricted roads, over which the heavy commercial traffic is not allowed to go, leaving them for the use of those who travel by automobile or by lighter pleasure vehicles.

"The street railway car does not use the boulevard.  Those who travel by this sort of vehicle have, however, at their command extensive means of quick transportation at small cost.  The 5-cent fare for considerable distances by street car, and the more luxurious automobile, using the parkways and boulevards, have furnished opportunities for extensive movement by all classes of people.

"That the Metropolitan District as a whole has received benefit from the reserving of open spaces and the construction of fine roads cannot be questioned.  The whole area has become more attractive to live in, more available to do business in, and property values have increased.  This general benefit, however, is

one that is vague, intangible and not to be directly placed, located or calculated. Local parks and playgrounds, under the new conditions, no longer meet the full needs of the population. The easy possibilities of long-distance travel have removed old limitations upon the movement of the population and have made all the parks more available for use by all the people.

"The District includes the parks, Nantasket and Revere Beach reservations, Charles River Basin, and the parkways and boulevards. . . ."

The report then describes the bases used by several preceding commissions in making their apportionments. The commission of 1900 "made its apportionment upon a valuation basis, but introduced the theory of abatements. It divided the cities and towns into three classes, according to their per capita valuation. It then abated to the class having the lowest per capita valuation a portion of their ratable share and transferred it to the class having the greatest per capita valuation. This method was approved by the court as within the language of the act.

"The commission of 1905 adopted the valuation theory, but deviated from its strict application by assessing upon some towns which had metropolitan boulevards within their territory a certain percentage for betterment because of that fact.

"The commission of 1910 adopted a plan with valuation as a basis, but exempting certain towns, called 'fringe towns,' from a portion of their share, and assessing that portion upon the remaining towns by valuation, and then apportioning 15 per cent. of the whole expense of parks according to population, exempting, again, from that portion of the assessment the so-called fringe towns. This was a combination of valuation, population and exemption.

"No single method has met with full and complete approval and adoption. Valuation, population, abatement, exemption and special benefits have all entered into the different apportionments. All of the methods have been confirmed by the Supreme Judicial Court, and no one of these methods adopted in whole or in part has been criticized by the court or held unconstitutional or invalid.

"The same arguments for each method have apparently been urged upon all previous commissions. Some municipalities have

always striven for straight valuation plan; some for a combination of valuation and population; and some for further exemptions or abatements for special reasons of their own. . . .

"Conditions are such at this time that we see no reason for making either abatements or exemptions or assessing special benefits; and we come finally to the consideration of the question as to whether the apportionment should be made upon the ordinary plan of valuation according to property, or apportionment by a combination of valuation and population. . . .

"The demand for the creation of the Metropolitan Parks District arose because the population in that area was increasing rapidly. Serious congestion was threatened, and the opportunity to secure large tracts for preservation was growing less each year.

"The population to be provided for was that which tended most to create congested conditions, and which was least able to provide for its own out-of-door life, health and recreation. While use of the parks was, of course, to be free to all, it was expected that that use would probably be greatest by those whose circumstances prohibited extended travel and the enjoyment of distant places. Such a use is incapable of being measured with accuracy. It may or may not be directly proportional to the population of particular cities or towns. We are inclined to believe that it is nearer to population than it is to valuation percentages, and that high population percentages do furnish some indication of need if not of use. By letting population enter as a factor into the problem of apportionment, and allowing its burdens to fall in part as they do in single municipalities, no injustice is done and no real departure is made from ordinary procedure.

"The parks stand on a different basis from boulevards and parkways. They were created for a different use. The boulevards and parkways are public highways, and the cost of construction and maintenance may well follow the customary practice in regard to the expense of highways.

"Nantasket Beach. — This Reservation stands by itself, and for the purpose of apportionment is in a different district because of the inclusion of Cohasset. As a result of our views and inquiries into its use, it appeared that the population resorting to it came as largely from outside as from inside the District, and that it

was more of a State than a mere district reservation. We apportion the cost and expense of maintenance of this Reservation according to valuation.

"Charles River Basin. — The Apportionment Commission of 1910 has already determined what portions of the construction costs were specifically to be assessed upon the cities of Boston and Cambridge under the provisions of section 9, chapter 465 of the Acts of 1903, as amended by section 2, chapter 402 of the Acts of 1906, and we regard that matter as settled. All the remainder of the construction and all the maintenance expense we apportion among the several municipalities according to valuation.

"We deem it just and equitable to make, and therefore do make, apportionment as follows:

"Park maintenance, excluding Nantasket, is apportioned according to the average percentage of valuation and population.

"As by law one-half the expense of boulevards is paid by the State and one-half by the Metropolitan Parks District, one-half of the cost of construction and maintenance of boulevards, and all other expenses, both of construction and maintenance, except maintenance of parks as above stated, are apportioned according to valuation.

"The cost of construction and maintenance of Nantasket Beach is apportioned according to valuation."

The report then contained tabular statements showing the percentages of apportionment among the thirty-eight towns and cities of the metropolitan parks district. "Table A" showed the apportionment for Nantasket beach reservation. "Table B" showed the apportionment for maintenance of parks, and "Table C" was named "All Other Maintenance and Construction Expenses."

Several of the towns requested of the commissioners rulings of law. The first three rulings requested by the town of Weston, which the commission refused to make, alone are material to this decision, and were as follows:

"1. That this commission must determine the cost of the construction of the marginal conduit on the south side of the Basin.

"2. That this commission must determine, as they shall deem

just and equitable, what portion of the cost of the construction of the marginal conduit on the south side of the Basin shall be apportioned to the city of Boston.

"3. That this commission must determine, as they shall deem just and equitable, what portion of the cost of construction of the marginal conduit on the north side of the Basin shall be apportioned to the city of Cambridge."

A motion of the city of Boston for a confirmation of the report was heard by *Carroll*, J., by whose order a decree was made overruling objections and accepting the report.

The town of Weston "on its own behalf and on behalf of such other cities and towns as may desire to join" therein appealed "from the decree . . . and especially from that part thereof which relates to the apportionment of the cost of construction and the cost of maintenance of the Charles River Basin." The towns of Weymouth, Hull and Hingham and the city of Lynn joined in the appeal.

It was agreed by counsel with the consent of the single justice that the report of the apportionment commission of 1905 and the report of the apportionment commission of 1910 might be referred to, and also the reports of the metropolitan park commission for the years 1910 to 1915, inclusive.

Such portions of the report of the apportionment commission of 1910 as related to Charles River dam and basin and are material to this decision were as follows:

"1. Maintenance. The different works to be performed under the Charles River Dam and Basin Acts have been completed, and they now occupy a central location in the Metropolitan Parks System. In viewing these works, the commissioners observed that at the present time little use is being made of them, outside of the lock, dam and roadway thereon. When this new addition to the Metropolitan Parks System has been longer in use, a sounder judgment can be passed upon the actual and probable user by the public. They therefore decide that the elements of population and user should not at this time be taken into consideration in their apportionment, either of the cost of maintaining or constructing these great public works. The commissioners determine and make award that all expenses of maintenance of the Charles River Dam and Basin and other works, incurred under chapter

465 of the Acts of the year 1903, as amended by chapter 402 of the Acts of the year 1906 or by any other acts in amendment thereof or in addition thereto, shall be borne by the cities and towns in the Metropolitan Parks District in proportion to valuation. . . .

"6. Boston Marginal Conduit. The commissioners on the evidence find the cost of the marginal conduit on the south side of the Basin to be the sum of $642,579.99. The commissioners find that the city of Boston has received a special and peculiar benefit from the construction of this conduit, and they find and apportion to the city of Boston sixteen and two thirds per cent. of the entire sum expended in the construction of said conduit, and they apportion the remainder of said cost to the cities and towns in the Metropolitan Parks District, including Boston, according to valuation as fixed by statute for the year 1910.

"7. Cambridge Marginal Conduit. The conduit on the north side of the Basin in the city of Cambridge has been constructed and is in successful operation. The cost of its construction, the commissioners find upon the evidence and report, was $101,909.28. The commissioners find that this conduit is of special and peculiar benefit to the city of Cambridge, and they therefore find and apportion to the city of Cambridge sixteen and two thirds per cent. of the total cost thereof, and they apportion the remainder of said cost to the cities and towns in the Metropolitan Parks District, including Cambridge, according to valuation as fixed by statute for the year 1910.

"8. Basin, Dam and Other Works. The commissioners determine and report that all other sums to be apportioned by them in accordance with the requirements of the statutes shall be paid by the cities and towns in the Metropolitan Parks District in proportion to valuation as fixed by statute for the year 1910."

Material portions of St. 1903, c. 465, § 9, as amended by St. 1906, c. 402, § 2, are as follows:

"The commissioners appointed under the provisions of chapter four hundred and nineteen of the acts of the year eighteen hundred and ninety-nine, and amendments thereof, in apportioning the expenses of maintaining the metropolitan parks system shall include as part thereof the expense of maintenance incurred under

sections one, two, three, four, five, six, seven, eight, eleven and twelve of this act; shall also determine as they shall deem just and equitable what portion of the total amount expended for construction under sections three, four, five and six of this act shall be apportioned to the cities of Boston and Cambridge as the cost of the removal of Craigie bridge and the construction of a suitable bridge in place thereof, and the remainder shall be considered and treated as part of the cost of construction of the metropolitan park system; and shall also determine as they shall deem just and equitable, what portion of the total amount expended for the cost of construction of the marginal conduit on the south side of the basin and of the embankment and park, provided for by this act, shall be apportioned to the city of Boston as the cost of the construction of said embankment and park, and what portion shall be fixed as the cost of said marginal conduit."

*S. C. Bennett*, for the town of Weston.

*A. P. Worthen*, for the town of Weymouth.

*T. H. Buttimer*, for the town of Hull.

*A. G. Wadleigh*, for the city of Lynn, submitted a brief.

*J. O. Burdett*, for the town of Hingham, submitted a brief.

*J. P. Lyons*, for the city of Boston.

BRALEY, J.   The commissioners were appointed to apportion the expenses of the metropolitan parks district in such manner as they deemed just and equitable, and for this purpose they were to determine and make award for the succeeding five years of the proportion in which each of the cities and towns should annually pay money into the treasury of the Commonwealth, for the amount estimated to meet the interest and sinking fund requirements of the appropriations and loans authorized for the metropolitan park system; and for the Nantasket beach reservation and the Charles River basin as well as the amount necessary to meet the expenses of the board of park commissioners, incurred in the care, maintenance and operation of the parks, reservations, boulevards and other works acquired, cared for, or controlled by the board, and to make up the deficiency if any in the estimates and payments for preceding years as found by the treasurer.   St. 1893, c. 407.   St. 1894, cc. 288, 483.   St. 1899, cc. 419, 464.   St. 1903, c. 465.   St. 1906, c. 368, § 1;   c. 402, § 2.   St. 1909, c. 524, § 2.   See also Sts. 1894, c. 483;   1909, c. 524;   1911, c. 587;   1913, c. 539.

It will be seen upon comparison of these statutes that while the original act of 1893, c. 407, which established the park commission to care, maintain and make available to the inhabitants of the district as defined in § 4 open spaces for exercise and recreation, and provided in § 10 that three commissioners were to be appointed by this court to apportion the expense of preservation to be paid by cities and towns comprising the district, for the term of five years "next following the year of the first issue of . . . scrip or certificates, to meet the interest and sinking fund requirements," and upon the expiration of the first term, for appointments of commissioners every five years thereafter, the St. of 1894, cc. 288, 483, authorized the commission to build roadways and boulevards to connect any road, parkway or other public open space with any part of the cities or towns of the district by suitable roadways or boulevards, and also conferred jurisdiction over the Revere beach reservation and the Nantasket beach reservation.

The commissioners accordingly were required to ascertain and apportion the expenses during the next five years succeeding their appointment, for the construction and maintenance of the park system and of the roadways and boulevards constructed by the commission and the expenses required for the several reservations, of which only the Nantasket reservation is before us on the appeal. In the performance of these duties, "the commissioners are clothed with a wide discretion as to the considerations which should guide them in making the apportionment. It is to be made in such a manner as they may deem just and equitable. Their reasonable determination and not that of the court is to prevail." *In re Metropolitan Park Commissioners, petitioners,* 209 Mass. 381, 384.

It is stated in the report that, by reason of the development of the park system with its extensive and numerous roads and boulevards, "As the investment grows the maintenance expense also grows, and the problem of a just apportionment becomes more serious because of the large amounts involved." The advantage to the public of open and ornamental spaces for the enjoyment of light, air and prospect were provided for by the original statute, and the combination of roadways and of parks apparently has become during each quinquennial period more and more a place of recreation for the public, while the avenues and boulevards subsequently authorized have rendered the system more accessible to

the inhabitants of the district, which as a whole constantly has grown in population and wealth. If the element of valuation must be a constant factor in making the apportionment, we find no reason for holding as matter of law, that the commisssioners acted unreasonably or inequitably or unconstitutionally when in ascertaining the apportionment for the maintenance of the parks, they based the percentage on the average valuation, in combination with the average population. It is plain that by reason of proximity, the parks would afford a more convenient and more frequently used pleasure resort for the inhabitants of certain municipalities than that which is afforded to the remote or "fringe" towns of the district. *Kingman, petitioner*, 153 Mass. 566, 579. *Kingman, petitioner*, 170 Mass. 111, 118. *De Las Casas, petitioner*, 180 Mass. 471.

The commissioners having decided that Nantasket beach had become a shore resort frequented much more largely by the general public than by the people living within the reservation, we are unable to say that in levying the assessment on valuation only, the burden was not justly equalized. *In re Metropolitan Park Commissioners, petitioners*, 209 Mass. 381, 386.

Nor are the tables showing the percentages resulting from levying the apportionment in the mode observed open to the objection that they "fail to indicate exactly the apportionment made by the commissioners." It is not contended that the tabulations are founded upon inaccurate or insufficient data, and the commissioners were not required to set forth their arithmetical computations in detail. *Adams, petitioner*, 165 Mass. 497, 501. It is to be presumed that they followed the last decennial census and the last valuation as established by statute. Amendments to the Constitution, art. 21. St. 1905, c. 17. St. 1909, c. 490, Part I, §§ 57–62. And the grounds of their judgment are not so insufficiently set forth, that the constitutional rights of the appellants are shown to have been invaded. *De Las Casas, petitioner*, 178 Mass. 213, 220; *S. C.* 180 Mass. 471.

We now come to the rulings requested and refused. It is stated that the appeal rests substantially on that portion of the report concerning the Charles River basin where the commissioners say, "The Apportionment Commission of 1910 has already determined what portions of the construction costs were specifically to be

assessed upon the cities of Boston and Cambridge under the provisions of section 9, chapter 465 of the Acts of 1903, as amended by section 2, chapter 402 of the Acts of 1906, and we regard that matter as settled. All the remainder of the construction and all the maintenance expense we apportion among the several municipalities according to valuation."

By agreement of parties and with the approval of the single justice the previous reports of the park commission, and the reports of the apportionment commissioners for certain years could be referred to at the argument. While it is to be assumed that the present commissioners were familiar with the reports of former commissions, the report of the last preceding commission from which liberal excerpts appear in the briefs of counsel seems to be the only report which it is necessary to consider in connection with the record. The language of the report is, that "The different works to be performed under the Charles River Dam and Basin Act have been completed . . ." and the apportionment which followed is stated to be for the office expenses of the park commission "the care and cost of maintenance and all other lawful charges with reference to the Charles River Dam and Basin, excepting therefrom sinking fund and interest requirements, for the term beginning Jan. 1, 1910, until the first day of January of the year in which a new award is made as provided by law." This report having been confirmed by *In re Metropolitan Park Commissioners*, 209 Mass. 381, the award was a final adjudication for the term for which it was made of all matters referred to the commissioners, and is binding on the parties, which included the appellants who appeared and were represented by counsel. St. 1899, c. 419, § 1. See St. 1909, c. 175.

The public work since denominated as the Charles River basin was authorized by St. 1903, c. 465, as amended by St. 1906, cc. 368, 402. By St. 1909, c. 524, upon completion of the "main parts," or "in any event, on and after the first day of July in the year nineteen hundred and ten," the commission appointed under St. 1903, c. 465, as amended to build the dam, and construct the basin as therein specified and required was abolished, and all its powers and duties were transferred to, and were thereafter to be exercised by, the metropolitan park commission. The "next appointed" apportionment commissioners, namely the commissioners of 1910,

in apportioning the expenses of the metropolitan park system were by § 9 to include as part of the cost of maintenance the amount already incurred and disbursed under St. 1903, c. 465, and independently of the cost of Craigie bridge and the construction of a suitable bridge in its place, the entire expense of which was to be borne by the cities of Boston and Cambridge, they also were to determine "as they shall deem just and equitable" what portion of the total amount expended for construction under §§ 3, 4, 5, 6, 7, 11 and 12 as amended by St. 1906, c. 402, should be apportioned to Boston and Cambridge because of any special or peculiar benefits, treating the balance remaining as part of the cost of the park system. Their report appears in the record of *In re Metropolitan Park Commissioners, petitioners,* 209 Mass. 381, and upon examination of the papers, the commissioners are shown to have considered the work of construction as completed and after having determined the cost of construction made certain deductions for any special benefits conferred on Boston and Cambridge before levying the assessment required for the remainder. If any dredging has since become necessary to maintain the original depth of the several canals, or of the basin outside the navigable channels, or of other dredging and the relocating or removal of pipes or conduits before the dredging could be done effectually, or any repairs however extensive which are required to maintain the entire work as designed and completed, the moneys so expended are properly chargeable to the expense of maintenance, and constitute no part of the original construction. St. 1903, c. 405, §§ 4, 5. And the appropriations subsequent to 1910 appear to have been for care and maintenance only. St. 1911, c. 570. St. 1912, c. 301. St. 1913, c. 374. St. 1914, c. 222. Spec. St. 1915, c. 153. It is urged that as the reports of the park commissioners since the former apportionment show that the granite block pavement of the roadway of the dam settled and, the pavement having been relaid on a concrete foundation, Boston and Cambridge should pay so much of the expenditure as might be just and reasonable, leaving the remainder to be borne by the district. St. 1903, c. 465, §§ 3-9. The stability and permanence of the roadway having required the work, it was in the nature of necessary repairs or replacements which are chargeable to maintenance. We discover no error in the application by the commission of the report of their predecessors except in the

refusal to give the appellants second and third requests for rulings of law.

The marginal conduits named in those requests having been completed formed part of the metropolitan park system. While the commission was not obliged to ascertain anew the cost of construction but could take the amount fixed by the commission of 1910, it was appointed to make an apportionment for the next succeeding five years, as provided by the statute, which required the commission to determine for itself what special or peculiar benefits, if any, Boston and Cambridge had derived from the construction of the respective conduits before any assessment could be levied on the appellants. If it so determined the commission could adopt, increase or diminish the percentage of apportionment in each instance shown by the former apportionment, or could find that no deduction should be made; but for the reasons stated it could not treat the question as having been finally or conclusively adjudicated by the former report and the decree thereon.

The objections to the confirmation of the report which are open on the appeal remain. *Old Colony Railroad, petitioner,* 163 Mass. 356, 359. No contention is made that the commissioners were not required to provide for maintenance, and as the whole apportionment shown by table "C" is on the basis of valuation, we perceive no sound objection to combining with the assessment for the cost of maintenance, an assessment for the cost of construction, instead of separate assessments and separate tables as urged by the appellants. "All the remainder of construction" having been apportioned, the appellants who must pay their proportion maintain, that they are entitled to know what the "remainder" comprises, and that the grounds on which the commissioners based their conclusion should be sufficiently stated to enable the court to decide whether an error of law has been committed. *De Las Casas, petitioner,* 178 Mass. 213. If on the face of the report, the completion of any of those parts of the basin is not referred to, it is plain that "all the remainder of construction" is intended to cover and to provide for any work of construction in connection with the care and maintenance of the basin which the Legislature from time to time might deem necessary during the succeeding period. But if no further appropriation for construction should be authorized, yet even then the apportionment, in

their judgment was just and equitable for care and maintenance only.

The decree confirming the report must be reversed and what further proceedings should be taken are to be settled before a single justice.

*So ordered.*