Wilson, J.
This was an action of contract to recover compensation for the use of certain trucks and tractors *28 hired of the plaintiff by the Director of Engineering of the defendant city and used in plowing and removing snow from the streets of the defendant city on February 1, 2, 3, 4, 5 and 17, 1935.
At the trial there was evidence tending to show that the account upon which this action is based is an accurate account of the use to which said trucks and tractors were put, and the dates when they were used and amount and value of such use. It was admitted that the Director of Engineering was the proper officer to order the use of said trucks and tractors and that snow removal was one of the duties of his department. It was agreed that the plaintiff was entitled to recover the full amount in the declaration if, in view of the questions of law involved, it was entitled to recover anything.
That the agreement for the use of the trucks and tractors was entered into in pursuance of the following order of the City Council passed unanimously on January 28,1935:
“Whereas: Due to the conditions of the City because of the extreme amount of snow, an extreme emergency involving the health and safety of the people is hereby declared;
Therefore, be it ordered: That the Director of Engineering be, and hereby is ordered to take all necessary means and expend any amounts of money necessary to expeditiously and thoroughly relieve these conditions.”
That there was no special appropriation made for executing said order, and none was made during the year 1935 covering snow plowing and removal, except in the annual budget.
The annual budget was adopted on February 18, 1935, and thereafter approved by the Emergency Finance Board, and contained an item of $95,000' for “Snow and Sanding,” which item was that to which snow removal charges were *29 chargeable under the system of bookkeeping nsed by the defendant city.
Under the system then obtaining, payrolls for labor were presented and paid weekly and other bills were presented not later than the fifth of the following month and paid the twentieth of that month.
That the claim of the plaintiff, examined and approved by the Director of Engineering and the City Auditor, together with others for snow removal, came before the City Council sitting as a committee of accounts on March 9, 1935. That it then appeared that of the appropriation of $95,000, there remained unexpended only $5496.67, and unpaid claims for snow removal in February, including the plaintiff’s claim, amounted to $17,984.14; that it was thereupon voted to approve all said claims, including that of the plaintiff now before the Court.
The report recites that after the indebtedness to the plaintiff was incurred, which we assume means the use of the plaintiff’s trucks and tractors, to be completed, several items, for the most part payrolls, were charged to the “Snow and Sanding” appropriation and amounting in all to $16,914.96. It does not appear from the report when these claims were incurred.
That the amount of expenditures for snow removal by the Department of Engineering for February, 1935, was $66,181.36, and largest sum expended for similar purposes during any one month of the year 1934 was $34,336.31.
Other than the adoption of the emergency order by the ■City Council, there was no evidence as to whether or not an extreme emergency existed.
The plaintiff seasonably presented the following requests for rulings, all of which the trial court refused and found for the defendant:
*30 1. That upon the evidence, an extreme emergency had been declared by the entire City G-overnment of the defendant city on January 28, 1935.
2. That in an extreme emergency involving the health or safety of persons or property, a city department may incur liability in excess of appropriations. G. L. (Ter. Ed.) Chapter 44, Section 31.
3. That the plaintiff corporation’s liability against the defendant city was incurred during this extreme emergency involving the safety of persons and property and is a legal liability which the defendant city is obliged to pay.
4. That as a matter of law, the plaintiff corporation was legally employed by the defendant City of Lawrence through its Commissioner of Engineering, and that under the charter of the City of Lawrence, Section 40, the Commissioner of Engineering has exclusively the powers imposed by law on Surveyors of Highways.
5. That as a matter of law, the Commissioner of Engineering, with the powers of a Highway Surveyor must remove obstacles in the highway and the expense must be paid by the municipality. G. L. (T. E.) Chapter 84, Section 7. 174 Mass. 450.
6. That as a matter of law, there is no insufficiency of appropriation at this time to pay the plaintiff corporation the compensation due it.
7. That upon the evidence the Court must find that there is in the appropriation of defendant city, made for the purpose of “Snow Removal 1935” a sum sufficient to pay the plaintiff corporation in this action the compensation due it.
8. That the defendant cannot escape liability under the contract legally made by failing to make a sufficient appropriation to meet the requirements thereof.
Smith v. Inhabitants of Dedham, 144 Mass. 177.
G. M. Byrnes Co. v. Barnstable, 286 Mass. 544.
9. That upon the evidence, payments of liabilities incurred after the plaintiff corporation’s liability, have been paid by the City of Lawrence from “Snow Removal” appropriation 1935.
10. That upon the evidence and upon the law, judgment must be returned for the plaintiff corporation in the amount of the declaration.
*31 The trial court made certain “Special Findings of Facts.” He found the order of the City Council above set out, was passed by unanimous vote, and further so found as follows:
“No special appropriation was made for executing the above order, and no appropriation was made during the year 1935 covering snow plowing and snow removal except in the annual budget.
“Other than the record of the above vote, there was no evidence to show that an extreme emergency existed, involving the health and safety of the people, and I rule that the plaintiff has not sustained the burden of proving the fact that such an emergency existed.
“The total amount of work ordered and done in snow plowing and snow removal by the Department of Engineering for the month of February 1935 was $66,191.36. The highest sum expended for similar purposes during any one month of the year 1934 was $34,336.31.
“All items in the account annexed to the plaintiff’s declaration were for plowing snow and removing snow from the streets of the defendant.
“The plaintiff submitted its claim to the City Council, the same having previously been examined and approved by the Director of the Department of Engineering and the City Auditor. This claim, together with others for snow plowing and snow removal, came before the City Council sitting as a Committee on Accounts at a meeting held March 9, 1935. At that meeting the City Auditor called the attention of the City Council to the fact that of the appropriation of $95,-000.00 for “Snow and Sanding” there remained unexpended only $5496.67, and that the February unpaid claims for snow plowing and snow removal including the claim which is the subject of this action, amounted to $17,987.14. It was thereupon voted to approve all the claims submitted including the claim which is the subject of the present action, all the members voting in the affirmative except the Mayor.”
We take judicial notice of the charter of the City of Lawrence (Acts 1911, chap. 621, as amended) and we must assume this was done by the trial judge, although the report is silent as to whether it was introduced in evidence. *32 Ellis v. County Commissioners of Bristol, 2 Gray 370, 372. Attorney General v. McCabe, 172 Mass. 417, 420. Brodsky v. Fine, 263 Mass. 51, 54. See also Norman & Houghton on Trial Evidence, 2d Ed. sec. 766.
It is to he observed that the Director of Engineering, subject to the control of a majority of the members of the City Council, “shall have exclusively the powers of, and be subject to the liabilities and penalties imposed by law on, surveyors of highways.” All department heads are “subject to supervision and control of a majority of the members of the City Council, acting jointly, except as otherwise provided in this Act.” See City Charter, §§40, 41.
By G. L. (Ter. Ed.) chap. 84, §7, certain duties are imposed upon the Surveyors of Highways. Snow removal is one of such duties. It follows that contracts for the same are within the corporate powers of the city.
By the unanimous vote of the City Council at the meeting held on January 28, 1935, at which the Commissioner of Engineering was present and voted, it was determined by the public officer and board in whom the provisions of law and the charter placed such decision, that “because of the extreme amount of snow, an extreme emergency involving the health and safety of the people is hereby declared” and the Director of Engineering was “ordered to take all necessary means to expend any amounts of money necessary to ... . relieve those conditions.” Whether such an extreme emergency existed was a fact primarily for the determination of the officials of the city.
It has been said that the decision of the surveyor of highways under some circumstances is not subject to revision. This principle was stated in Morrison v. Howe, 120 Mass. 565, 572, as follows:
*33 “Whether that which is found in the highway constitutes an obstruction is to be determined by them, and their decision is not liable to be afterwards revised by a jury.”
See also Johnson v. Dunn, 134 Mass. 522, 523, 524.
The appropriation and expenditure of public funds in the defendant city is governed by the provisions of G. L. (Ter. Ed.) chap. 44, and the provisions of the city charter. The instant case involves only the construction of sections 31 and 34 of said chapter and sections 29 and 35 of the city charter, which contain the same provisions for emergencies.
It is argued by the defendant that the emergency provisions of G. L. (Ter. Ed.) chap. 44, sec. 31, and sec. 29 and 35 of the city charter, are not applicable to the period after the close of the fiscal year and before the approval of the annual budget for which provision is made in see. 34 of said chapter.
We must consider all the provisions of the statute and those of the city charter together. They must be presumed to have been “intended to be consistent and harmonious.”
Goodale v. County Commissioner, 277 Mass. 144, 151. See also Flood v. Hodges, 231 Mass. 252, 257, where it was said:
“A legislative act ought to be interpreted, whenever permitted by its words, so as to make it effective toward a substantial end and not devoid of vitality. Barrenness of accomplishment cannot be imputed to the legislative department of government.”
If this contention of the defendant was correct, the interval referred to in said section 34 would be without the protection afforded by the emergency exception set forth in section 31. It is common knowledge that under the practice now prevailing in this Commonwealth that interval occurs in midwinter when severe storms and their resulting incidents often creating extreme emergencies “involving the *34 health or safety of persons or property” are to be expected. We cannot believe it was so intended by the legislature. In our opinion that emergency provision has full force and effect at all times.
The trial judge also ruled that the vote of the City Council was not sufficient to maintain the burden of proof that an extreme emergency existed.
The burden of proof is upon the plaintiff to prove all assertions of fact necessary to entitle it to prevail. Hughes v. Williams, 229 Mass. 467, 473. Wylie v. Marinofsky, 201 Mass. 583, 584. And whether the burden of proof has been sustained is ordinarily a question of fact for the trial court. Crowley v. Freeman, Mass. Adv. Sh. (1935) 1405, 1407. Poulos v. Labbe, Mass. Adv. Sh. (1935) 1427.
In the case at bar, however, there was a resolution of the City Council which recited that “an extreme emergency existed” and the cause thereof was sufficiently described.
There is a presumption that the acts of public bodies are regular and lawful. Openshaw v. Fall River, 287 Mass. 426, 432. See also Ayer v. Commissioners of Heights of Buildings in Boston, 224 Mass. 30, 35. Moore Drop Forging Company v. Board of Conciliation and Arbitration, 239 Mass. 434, 437. Nevins v. City Council of Springfield, 227 Mass. 538. In re Metropolitan Park Commission, 227 Mass. 183, 193. Whitney v. Malden & Melrose Railroad Company, 202 Mass. 298, 307. Bryant v. Pittsfield, 199 Mass. 530, 532. General Outdoor Advertising Company v. Department of Public Works, 289 Mass. 149, 192.
The effect of a presumption is stated by Rugg, C. J., in Duggan v. Bay State Street Railway, 230 Mass. 370, 378, as follows:
“The presumption .... is not itself evidence.^ It is a simple rule to which resort is had when there is a failure of. evidence. A presumption ordinarily is not *35 evidence, bnt is a rale of evidence .... Presumptions are not indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear.”
It was also said in Gilligan v. New England Telephone & Telegraph, Company, 265 Mass. 51, 55:
“A presumption stands till the facts are shown.”
See also Duggan v. Bay State Street Railway, supra. Bagnell v. Boston Elevated Railway, 247 Mass. 235, 237.
No evidence was offered by the city to refute the existence of the emergency set out in the resolution and so overturn the presumption raised by the resolution. Under such circumstances the trial court was bound to instruct himself that the burden of proof had been sustained on that issue.
In Los Angeles Dredging Co. v. Long Beach, 210 Cal. 348, the language of the charter was “actual emergency work” and the resolution of the council authorizing the contracts ' in dispute recited that “actual emergency work” was contemplated, the court said:
“The more difficult problem is whether the contracts made were, in fact, emergency contracts. To state what constitutes an ‘emergency’ is not an easy task. The term depends greatly upon the special circumstances of each case, and the authorities are not very helpful in the present inquiry. By definition, the term ‘emergency’ implies a sudden or unexpected necessity requiring speedy action ....
“To the above may be added the compelling weight of the resolution of the city council, already quoted. The resolution recites the facts and declares them to constitute an emergency. Such a declaration, though not conclusive, is prima facie evidence of the existence of an emergency, and places the burden on the party attacking the recital.....Defendant has failed to meet this burden with any evidence, and its argument .... is quite insufficient to overthrow the presumption arising from the recital in the resolution. As *36 the court says in Morgan v. Long Beach, 57 Cal. App. at 138, ‘In the absence of evidence to the contrary, however, we must assume that the council acted upon sufficient inquiry as to whether or not an emergency existed. The declaration is prima fade evidence of the fact.’ ”
In our opinion the trial court erred in refusing to instruct himself as requested in plaintiff’s requests for rulings 1, 2, 3 and 4. This was error prejudicial to the rights of the plaintiff.
The case of Safford v. Lowell, 255 Mass. 220, 225, is not authority for a different conclusion from that reached by us in the instant case. There the condition which was claimed to be an emergency did not arise suddenly.
There was evidence as to the nature and extent of the condition existing sufficient, if believed, to overturn the presumption and presenting a question of fact as to which the master’s finding that no extreme emergency existed was final and conclusive.
See also and to the same effect Merrill v. Lowell, 236 Mass. 463, 464.
Upon the record before us the trial court was bound to find an “extreme emergency” as described in the statute existed, and that the claim, for which compensation is sought by the plaintiff, was a debt of the city lawfully incurred by the proper officer thereof.
The city cannot escape liability from such an obligation by failure to make a specific appropriation therefor. G. M. Byrne Co. v. Barnstable, 286 Mass. 544, 552, 553. Webb Granite, &c. Co. v. Worcester, 187 Mass. 385, 390.
The case does not fall within the class of cases represented by McHenry v. Lawrence, Mass. Adv. Sh. (1936) 1489. Dyer v. Boston, 272 Mass. 265. Adams v. County of Essex, 205 Mass. 189, and similar cases.
*37 Because of the “extreme emergency” here present, the case falls within the exception set out in said chapter 44, section 31, and like provisions of the charter, and the restrictions with which said chapter 44 and the city charter surround the expenditure of the public funds do not apply. See Byrne v. Barnstable, 286 Mass. 544, 553.
The plaintiff’s eighth request stated a correct principle of law. It was error to refuse it.
When such an “extreme emergency” occurs, the city is protected by the judgment, honesty, and good faith of the public officers chosen and entrusted with the management of its affairs.
The plaintiff’s tenth request called the attention of the trial judge to the sufficiency of the evidence. It should also have been given.
Because of what has been here said, it seems clear that the plaintiff’s remaining requests are immaterial. A detailed discussion of them would serve no useful purpose.
If the trial jndge had instructed himself correctly, his finding on the record before us would necessarily have been for the plaintiff in the amount claimed in the declaration, with interest from the date of demand, which the report indicates as March 9, 1935.
The finding of the trial court is reversed and judgment will be entered for the plaintiff in accordance with the agreement set forth in the report. G. L. (Ter. Ed.) chap. 110, sec. 110, 124. Andrade v. Hanley, 289 Mass. 335, 337.