TIMOTHY SHEA *vs.* INHABITANTS OF MILFORD.

Worcester.    Oct. 6, 1887. — Jan. 6, 1888.    C. ALLEN & KNOWLTON, JJ.,
absent.

A committee chosen by a town to erect a building is not a board of public officers,
but acts as agent of the town, and it is not obliged to act as a body, but may act
by the agreement of the individual members separately obtained.

The St. of 1883, *c.* 119, authorizing a town to build a Memorial Hall, and, for that
purpose, to borrow a sum not exceeding $20,000, does not prohibit the town from
voting to expend a larger sum upon the building.

A committee, appointed by a town to consider location, plans, and estimates, and
to make recommendations for a building to be built by the town, recommended
a certain location, and the plans and specifications of a certain architect, and
reported that the price should not exceed $20,000.   This report was accepted by
the town and placed on file, and the committee was instructed to receive pro-
posals for a building.   Subsequently, the town voted that the report and plans
of the committee be adopted, and that the same committee build the building.
The town also voted to raise by taxation for the purpose the sum of $2000, and
to borrow the sum of $20,000.   The specifications reported by the committee
were for the entire completion of the building, and stated that no charge should
be made for extra work, except it be ordered in writing by the architect.   *Held*,
that the plan and specifications were adopted by the town as a limitation upon
the powers of the committee.   *Held, also*, that the committee had authority to
change the specifications in order to remedy defects in them, and to improve
them in minor details, within reasonable limits.   *Held, also*, that the vote of the
town did not prohibit the committee from incurring liabilities for extra work
beyond the amount of the appropriation.

CONTRACT, on an account annexed, to recover for work done
and material furnished in the erection of a Memorial Hall in the
town of Milford.   At the trial in the Superior Court, *Bacon*, J.,
directed the jury to return a verdict for the defendant; and the
plaintiff alleged exceptions, which appear in the opinion.

*W. S. B. Hopkins & W. A. Gile*, for the plaintiff.

*T. G. Kent*, for the defendant.

W. ALLEN, J.   The committee was an agent of the town, and
not a judicial body or a board of public officers, and the ruling
of the court that the committee could act only as a body, and
not by the agreement of individual members separately obtained,
cannot be sustained.   *Haven* v. *Lowell*, 5 Met. 35.

The defendant contends that the further ruling, that there
was no evidence sufficient to show agency on the part of Swasey,
or action by the committee, was right, for the reasons that the

committee had no authority to make the contract under which the plaintiff claims, or authorize it to be made, and that the evidence was not sufficient to prove that contract.

The committee was appointed by the defendant town to build a Memorial Hall. Mead, Mason, and Company contracted with the committee to erect the building according to certain specifications. The plaintiff contracted with Mead, Mason, and Company to do all the stone-work according to the specifications. The plaintiff's bill of particulars contains five items for materials and labor which he contends were not included in his contract with Mead, Mason, and Company, but were furnished under a contract or contracts between him and the defendant, through the committee and Swasey, the supervising architect. The largest of these items, and the only one in reference to which any evidence was given, is $2500, for brown-stone trimmings for the building. It is not disputed that these trimmings were put in by the plaintiff, and that they were not included in the specifications. The first question is as to the authority of the committee to contract for work outside of the contract with Mead, Mason, and Company.

The Memorial Hall was built under authority of the St. of 1883, *c.* 119, which authorized the town to borrow for the purpose a sum not exceeding $20,000, but put no limit upon the amount the town might expend.

In November, 1883, a committee, which had been appointed in the April preceding to consider location, plans, and estimates, and to make recommendations, reported, to quote the words of the exceptions, "recommending the location on which the hall was afterwards built, and the plan and specifications of Frederick Swasey, architect, and reported that the price should not exceed $20,000." We would say here, that we do not understand by this that the committee recommended that the town should vote that the cost of the building should not exceed $20,000, but that they expressed the opinion that it would not, meaning the same as if they had said "ought not" or "would not." In the absence of the language of the report, and upon the mere statement of its substance, the plaintiff ought not to be bound by a meaning that is not clear, and the fact that this is not among the things recommended in the

report, and the action of the town at the same and at a subsequent meeting, indicate that the committee intended and was understood to express its opinion that it could be built for that sum. The report was accepted and placed on file, and the committee instructed to receive proposals for a building.

At a town meeting in March, 1884, the following votes were passed : " Voted, that the report and plans of the Memorial Hall committee be adopted. Amended : also location adopted. Also that the same committee locate and build the same. Voted, that, for the purpose of building a Memorial Hall, we raise by taxation the sum of $2000, and the town borrow the sum of $20,000, payable in equal instalments of $5000, in one, two, three, and four years."

The specifications reported by the committee in November, 1883, so far as material, were as follows : " Specifications of material and labor required in the erection and entire completion of a Memorial Building for the town of Milford, said building to be erected on the corner of Spruce and School streets in said Milford, and to be built in accordance with drawings and these specifications, furnished by Frederick Swasey, architect, of said Milford, and under his superintendence. Conditions. The contract will include all labor and material necessary to carry into entire completion all the works of every name and nature shown by drawings, except such parts as the specifications expressly designate to be furnished by the town. . . . . No charge of any kind shall be made for extra work except said work be ordered in writing by said architect. All orders for extra work or claims therefor must be presented to the committee within thirty days from the issue of said order."

The first question which arises under this action of the town is, whether the plan and specifications reported by the committee were adopted by the town as a limitation upon the powers of the committee. We think that they were, and that the committee was authorized to locate and build only according to the plan and specifications. This would require the committee to make one contract for the completion of the building. They could not materially change the location or the specifications for the building. The town had voted to build according to the specifications, and under one contract for the completion

of the building, and had authorized the committee to build. While it was the duty of the committee to make a contract for the completion of the building in substantial accordance with the specifications, they had authority to add to or to change the specifications in order to remedy defects in them, and to improve them in minor details, within reasonable limits. This authority would be implied, and it was recognized in the specifications themselves, in the provision regulating claims for extra work. Of course extra work — work not included in the general contract — must be done under particular contracts, and such contracts could be made with the general contractor or with any other person. We cannot say that the committee did not have authority to contract for the extra work which the plaintiff says he performed. This question does not appear to have been raised at the trial, and the evidence is not stated with reference to it. The principal item of the plaintiff's account is for brown-stone trimmings. It does not appear what the specifications were which were changed, nor what, if any, the increased cost was, nor how important the change was. The other items are all for extra labor, and vary in amount from $200 to $1000. No evidence whatever was offered in regard to them, and we cannot say that the committee had not authority to make contracts for the labor described.

After the votes of the town, the committee made the contract with Mead, Mason, and Company, by which the price to be paid for the building was $20,324.40. The defendant contends that the committee was limited to an expenditure of $20,000, and that, having contracted for more than that amount, they had no authority to make a contract which involved any further payment. We have already said that we do not regard the vote adopting the report of the committee as a vote that the expenditure should be limited to $20,000.

It is further argued that the committee could not make any contract which involved an expenditure in excess of the whole amount appropriated by the town, $22,000. The vote does not expressly prohibit the committee from incurring liabilities beyond the amount of the appropriation, and we do not think that such prohibition can be implied. While it was probably intended to make an appropriation large enough to cover the

contract price and such "extra work" as would be likely to be required, there seems to be no prohibition against contracting for "extra work" beyond the amount of the appropriation, if circumstances should justify and require it. Under what circumstances such a contract would be valid we need not consider, because it is not material to the decision of the question before us. It does not appear that the contract in question involved an expenditure beyond the amount appropriated. There was $1675 left of the appropriation, after the payments provided for by the contract with Mead, Mason, and Company. It is probable that some of this was used, but that does not appear in evidence. The plaintiff appears to have sued for the entire cost of the brown-stone trimmings, on the ground that the contract for them was made directly with him. There would presumably be an allowance made by the plaintiff to Mead, Mason, and Company, and by them to the defendant, for corresponding items in the specifications of which these took the place. How much that would be does not appear, though there is some evidence that it was supposed by the committee that the expense would not be increased by the substitution. It may be that the reduction from the contract price would equal the amount of the plaintiff's charge. The other items of the plaintiff's account are for labor, and no two of them exceed the amount of the appropriation apparently remaining not used; it may be that all the "extra work" done by the plaintiff would not exceed that. These matters were rendered immaterial by the ruling of the court, and no evidence was offered in regard to them.

The course of the trial is apparent from the exceptions. The plaintiff put in documentary evidence to prove the authority given to the committee by the defendant. He then proceeded to prove that authority was given by the committee to Swasey, and that Swasey ordered the work done; and called one Stratton, a member of the committee, and offered to prove by him that three members of the committee, including Swasey, who was a member of the committee as well as the architect, stated to him that they agreed to the change, and that he agreed to it, and that Swasey, in the presence of the witness, told the plaintiff that he had seen the committee, or a majority of the committee, and they had agreed to have the brown-stone trimmings. The

testimony of this witness was objected to, and was heard *de bene* by the court, and at its conclusion, on the statement by the counsel for the plaintiff, that he relied upon no other or different kind of evidence to prove authority in Swasey than the documentary evidence, and the statements of members of the committee, such as those testified to by Stratton, the ruling was made by the court. The ruling, as we understand it, was to the effect that any evidence of the action of the committee except when it was in session as an organized body was not competent; that the evidence offered by the plaintiff should be excluded; and the corollary from that, that there was no evidence in the case sufficient to show authority in Swasey to make the contracts with the plaintiff. Under this ruling, evidence that all the members of the committee agreed to authorize Swasey to order the change, that Swasey did in fact order it in writing, that the plaintiff's claim was duly presented to the committee, or that any of these things had been in any way dispensed with or waived, became immaterial and incompetent. The ruling of the court that the evidence was not sufficient could not have been on the ground that the plaintiff did not insist upon putting in evidence that the members of the committee agreed to the change, or that Swasey ordered it, after he had stated the character of the evidence that he had to offer, and the court had ruled that it was not competent.

But if the ruling that the evidence was not sufficient can be separated from the ruling that the evidence of agency was incompetent, and taken as an independent ruling upon evidence in the case, we think that it cannot be sustained. Swasey was the architect, having superintendence of the whole work, and through whom orders for extra work must pass, and was also a member of the committee. The testimony of Stratton was sufficient to show that, after there had been conversations among members of the committee, and between members and the plaintiff, in regard to having brown-stone trimmings, Swasey told the plaintiff that the committee, or a majority of the committee, had agreed to have it done, and that the plaintiff went on and did the work, with the knowledge and approval of the committee, and that the work was accepted by the committee. This was some evidence of agency in Swasey, and of action by the

committee to authorize additional work, that is, the substitution of brown-stone trimmings for the corresponding specifications. The words " at additional expense " in the ruling are immaterial, as applied to the item for brown-stone trimmings at least, because it does not appear that any additional expense was involved. The record does not show it; the item does not purport to be for extra work as the others do. The evidence only tends to show a contract with the plaintiff to furnish the trimmings, as a substitute for a contract with Mead, Mason, and Company to furnish some other trimmings; but there is no presumption or evidence that it was to be at an expense additional to the appropriation, or even to the contract price. The action of the plaintiff is to recover the full worth of the trimmings which he furnished under a contract between him and the defendant, through Swasey, thereto authorized by the committee. If a valid contract was made, and he performed it, he is entitled to recover according to its terms. If one of its terms was that it should not increase the cost of the building over the contract price, then the plaintiff can recover only so much as the contract price was reduced by his contract. It is not matter of law, nor a fact in the case, that the contract price has been paid in full, nor that it has not been reduced on account of the plaintiff's contract by more than enough to pay his claim.

We think, however, that the ruling must be taken to be a ruling that the evidence offered was not competent to prove any action of the committee, and that the plaintiff had for that reason failed to prove his case, and not as a ruling as to the sufficiency, to prove every part of the plaintiff's case, of evidence offered only to prove one part, and held to be incompetent for that.                               *Exceptions sustained.*