PATRICK McGOVERN *vs.* CITY OF SALEM.

Suffolk.   January 10, 1913. — May 20, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.·

*Contract,* Construction, Implied in fact.  *Waiver.*  *Pleading, Civil,* Declaration.

A contract in writing between a city on an arm of the sea and a contractor for the construction of a continuous water-tight line of sewer pipe about nine thousand feet in length running, buried in a trench under the harbor, from a pumping station on shore to an outlet beyond the mouth of the harbor, contained, under the caption, "Correcting imperfect work that may have passed inspection," provisions reading, "Any unfaithful or imperfect work that may not be discovered before the final acceptance of the work shall be corrected or replaced immediately . . . notwithstanding that it may have been overlooked by the proper inspector," and that "any omission to disapprove the work at the time of inspection, or at the time of any monthly or other estimate" should "not relieve the contractor of any of his obligations." *Held,* that the provision did not refer to the replacing or correcting of work which already had been completed in accordance with the terms of the contract and had been accepted, but to work which, although perfect so far as it had gone, was not finished but was wholly or partially destroyed while it was in progress and before it finally was accepted.

A contract for the construction of a water-tight sewer nine thousand feet long under a harbor for a city provided for periodical inspections, certifications by an engineer supervising the work for the city, and payments by the city after such certifications, and, as to repairs, provided in substance that, if at any time before the final payment to the contractor any part of the work, in the opinion of the engineer supervising the work for the city, required repairing, the repairs were to be done by the contractor upon notice from the engineer, or, the contractor failing, by the city, but at the expense of the contractor. *Held,* that the provision as to repairs referred to repairs to be made on work originally imperfectly done, and not to work properly done in accordance with the contract and accepted by the city.

A contract for the construction for a city of a water-tight sewer nine thousand feet long beneath a harbor provided that the contractor should have no claim for extra work not provided for in the contract unless it was ordered in writing by an engineer supervising the work for the city and by the city's board of sewerage commissioners.  After a certain section of the sewer had been completed in accordance with the contract and accepted by the city, a leak occurred therein which in no way was caused by any act or omission of the contractor.  The engineer asked the contractor to repair it.  The contractor answered that it

was "not up to" him to repair it. The engineer then said, "If [the anchor of] a ship has . . . pulled the pipe out of place, it is up to the city . . . and the city will pay for the repairs and I will recommend it. You go ahead, make the repairs and the city will pay for it." The contractor answered, "We will go ahead and make repairs." The repairs then were made by the contractor, the board of sewerage commissioners having full knowledge of all the circumstances and furnishing a new pipe therefor. In an action by the contractor for the work thus done and the materials thus furnished, no question was raised as to the power of the board to waive the provision of the contract, or to make a new contract, and it was *held*, that there was evidence warranting a finding, either that the city had waived the provision of the contract as to the manner in which extra work should be ordered, or that the work was done by the contractor under a new contract with the city.

Where work is done and materials are furnished in accordance with an express contract and nothing remains to be done by either party except payment, a common count for work done and materials furnished will lie against the party from whom payment is due.

HAMMOND, J. This is an action to recover for work done and materials furnished in the construction of a "force main sewer" under the waters of the harbor of Salem in this Commonwealth. The sewer when finished comprised a continuous water-tight line of sewer pipe about nine thousand feet in length running, buried in a trench under the bottom of the harbor, from a pumping station on shore to an outlet some distance beyond the mouth of the harbor. It was intended to serve as a water-tight conduit through which the sewage of the defendant city and of the adjacent town of Peabody was to be forced by pumps from the pumping station on shore to the outlet.

The work of construction was begun by the plaintiff in the early summer of 1905, under a contract between him and the defendant, the latter acting by its board of sewerage commissioners, hereinafter called the board, and was completed by him in August, 1907, at or about which time Bowditch, the chief engineer appointed by the board, certified to it under St. 1904, c. 312, that the sewer, pumping station and outlet had been so far completed as to be put into practical operation. The final payment was made in January, 1908.

From time to time during the construction of the sewer tests were made by forcing water through such parts of the pipe as had been laid and observing whether there were any leaks. During a test made on January 7, 1907, a leak was discovered in that part of the pipe which lay buried under the main channel of the harbor,

where the water was from thirty-five to forty feet deep, "from which the sewage was boiling up to the surface of the water." This is the leak for the repair of which the plaintiff seeks in this action to recover.

There were three counts in the declaration, but the case was submitted to the jury upon the third count alone, which was the common count for work done and materials furnished.*

The first ground of defense is that the work and materials were done and furnished under the written contract. The plaintiff contends to the contrary. It is clear that upon the evidence the jury might have found that the section of pipe upon which the work in question was done was originally laid in strict conformity with the terms of the contract. How stands the matter of acceptance? That part of the contract which relates to the payment for the work as it progresses provides that on the first of every month the engineer shall make an estimate of the work and materials actually done and furnished in the preceding month and of the contract value thereof, and that seventy-five per cent of this value shall be paid to the plaintiff, "provided always that said work shall have been done in accordance with said contract and specifications and to the satisfaction of said engineer" and the board. And it appears that the various payments to the plaintiff were made respectively upon the certificates of the engineer and the indorsement on the back thereof by the board, and that in this way the payment for the part of the sewer in question was made. The evidence would warrant a finding that this part of the work had been accepted by the board. There also was evidence which would warrant a finding that after this part of the sewer had been thus constructed and accepted, from some cause having no relation to any natural deterioration or defect in the work itself, or to any act, either of commission or of omission, on the part of the plaintiff or of his agents or servants, this section became disconnected from the adjoining section, thereby causing the great leak. And the question on this ground of the defense is whether upon these findings the plaintiff should be held to make the work good.

---

* The case was tried before *White*, J.

The jury found for the plaintiff in the sum of $10,489.25; and the defendant alleged exceptions.

The contract called upon the plaintiff to construct a sewer over nine thousand feet in length, most of it being under public waters, and to do everything to put it in complete working order in accordance with the terms of the contract, the work to be completed within about eighteen months from the date of the contract. There were provisions for alterations, repairs and for extra work. The provision as to alterations is not material. The provision as to repairs is in substance that if at any time before the final payment any part of the work shall in the opinion of the engineer require repairing, then the repairs are to be done by the contractor upon notice from the engineer, or, the contractor failing, by the board, but at the expense of the contractor in any event. The provision as to extra work provides that there shall be no claim for such work "unless the same is ordered in writing by said engineer, and signed by the . . . [board] . . ., and unless the claim for the same, when so ordered, is presented to the . . . [board] . . . before the fifth day of the month following that during which such specific order is complied with."

There is another clause of the contract under the heading "Correcting imperfect work that may have passed inspection," which, so far as material, is as follows: "Any unfaithful or imperfect work that may not be discovered before the final acceptance of the work shall be corrected or replaced immediately on the requirement of the engineer, notwithstanding that it may have been overlooked by the proper inspector, and estimated. . . . Any omission to disapprove the work at the time of inspection, or at the time of any monthly or other estimate, shall not relieve the contractor of any of his obligations; and all work of whatever kind, which, during its progress and before it is finally accepted, may become damaged from any cause, shall be broken up and removed, and replaced by good and satisfactory work."

Two copies of the contract are among the papers before us, one in the form of a small pamphlet and the other being printed in the body of the record; and it is to be noted that the word "not" which appears just before "may" in the first line of this paragraph as printed in the record, does not appear in the pamphlet. But, whichever may be the proper form, we do not regard the difference as decisive upon the interpretation to be given to the last part of the paragraph which alone affects the question before us.

We are of opinion that the last clause does not refer to work which already has been completed in accordance with the terms of the contract and accepted, but to work which, although perfect so far as it has gone, is nevertheless not finished but is wholly or partially destroyed while it (this very work) is in progress and before it is finally accepted. Any part of the work which once has been rightly done and accepted by the board is free from the operation of this clause. In view of the length of the sewer, its situation under public waters, the time required for its construction and the other terms of the contract, this seems to be the only reasonable construction. The case differs materially from *Boyle v. Agawam Canal Co.* 22 Pick. 381, cited by the defendant.

For similar reasons we are also of opinion that the paragraph as to repairs refers to repairs to be made upon work originally imperfectly done, and needed to bring the work up to the standard required by the contract, and not to repairs to be made upon work once properly done and accepted by the board and needed to remedy defects from causes having no relation to any inherent deterioration in the work itself or to any act of the contractor or his agents or servants.

The provision for the guarding of the work manifestly has no bearing upon the question before us. It is intended not for the protection of the sewer, but for the protection of persons and property from injury by the sewer.

It follows that the action is not necessarily barred by any of these provisions.

The next ground of defense is that "if the work . . . be not considered as obligatory under the contract, then it must be treated as 'extra work,' for which full provision was made in the contract." Upon this branch of the case we think that the jury upon the evidence could have found that before proceeding to relay the pipe the plaintiff said to the engineer that the displacement of the pipe had been caused by the anchor of a ship, and "it is not up to me to repair it;" and that to this the engineer replied, "If a ship has gone in and the anchor has pulled the pipe out of place it is up to the city of Salem, and the city will pay for the repairs and I will recommend it. You go ahead, make the repairs and the city will pay for it," and that the plaintiff replied, "We will go ahead and make repairs;" that such was the relation of the engineer and of

the board to each other and of each to the work that the board knew of this claim and were content that the work should be done pursuant to that understanding, and that the plaintiff, relying upon that assurance, did the work. Upon such findings taken in connection with the other evidence, especially the fact that the new pipe was furnished by the board, the jury might further find as a fair inference that if the contract was for extra work, then the contract provisions as to the manner in which such work was to be ordered and paid for were waived by the board, and that if not regarded as extra work within the meaning of the written contract, it was work done under a new contract.

No question is raised as to the power of the board to waive the terms of the contract or to make a new one.

There is no trouble with the pleadings. Where work is done in accordance with an express contract and there is nothing to be done but payment of the money therefor, the common count for work will lie.

The conversation between the plaintiff and the engineer was properly admitted as tending to show the contract under which the work was done.

*Exceptions overruled.*

*W. H. Rand, Jr.*, for the defendant.

*J. F. Cronan*, (*E. Lowe & J. A. McNamara* with him,) for the plaintiff.