EDGAR F. TWOMBLY & others *vs.* SELECTMEN OF BILLERICA & others.

Middlesex.     November 16, 1927. — January 6, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Pleading and Practice*, Amendment before full court. *Municipal Corporations*, Ratification of contract by town meeting, Officers and agents, Emergency appropriations. *Contract*, Ratification, Validity. *Equity Jurisdiction*, Suit by taxable inhabitants under G. L. c. 40, § 53.

The plaintiffs in a suit in equity under G. L. c. 40, § 53, to enjoin expenditures by a town under the provisions of a contract alleged to have been made by the selectmen without authority, appealed from a final decree dismissing the bill.   When the case came on to be argued in this court, the defendants presented a motion to amend their answers to aver that, subsequent to the hearing on the merits, the contract had been ratified by the town at a legal town meeting by vote passed pursuant to a sufficient article in the warrant.   The plaintiffs did not dispute the facts set up in the proposed amendment.   *Held*, that the amendment should be allowed under the provisions of G. L. c. 231, § 125.

A town, with a highway surveyor chosen under G. L. c. 41, § 62, by vote at a town meeting authorized general repairs to be made on designated portions of three separate roads, and made a certain and separate appropriation for each of the three roads.   The selectmen made a contract in writing with a contractor to make the repairs on the three roads for a gross sum without specification as to the amount to be expended on each piece of road.   It was not possible to determine by the terms of the contract exactly what proportion of the total contract price was to be allocated to each of the three roads.   The distances on each road to be surfaced, however, as called for by the contract, were inserted therein upon the estimate that such distance could be done with the appropriation for such road.   Taxable inhabitants by a suit in equity under G. L. c. 40, § 53, sought to enjoin expenditures under the contract. While the suit was pending, a special town meeting was held under a warrant containing an article "To see (1) whether the Town will vote to ratify the contract . . . [giving its date] entered into between the Town, acting through its Board of Selectmen for the time being, and . . . [naming the contractor] for the reconstruction of portions of . . . [naming the three streets]," and the town voted to ratify, using the descriptive language of that article in the warrant.   *Held*, that

(1) The vote to ratify was independent of other votes; direct, clear and unmistakable in its terms; positive and without qualification in its scope;

(2) The article in the warrant was sufficient to present the subject fully to the town;

(3) The circumstance that the vote of ratification was passed at a special instead of at the annual town meeting was of no consequence;

(4) Even if it be assumed that the duty of making the repairs voted was vested by law in the highway surveyor in the absence of a special vote empowering the selectmen to make a contract therefor, nevertheless the town might ratify a contract for those repairs executed in its behalf by the selectmen;

(5) Although the contract attempted to be made by the selectmen was imperfect in not stipulating the amount to be expended on each road in accordance with, or not in excess of, the appropriation made for each, and the length of road to be repaired in approximate conformity to the original votes, it was not illegal, and was susceptible of ratification at the special town meeting;

(6) After the ratification, the town and the contractor were bound by the limitations stated in the original votes although they were not specifically set out in the provisions of the contract ratified;

(7) Thus ratified, the contract as supplemented by the votes of the town relating to the subject matter, and as above interpreted, bound the town to the extent authorized by the votes.

The separate appropriations made for the repairing of the three roads by the original votes of the town when added were sufficient in amount to meet the price stipulated in the contract above described. By mistake, or under some misapprehension, a payment had been made out of one of these appropriations instead of out of the general appropriation for highways, so that, when the contract came to be made, it was discovered that there was not enough in the available appropriations to equal the contract price. Thereupon, in response to request by the selectmen, the finance committee of the town before the execution of the contract voted to transfer a sum sufficient to cover this shortage from the reserve fund to the particular special appropriation. *Held,* that such transfer by reason of G. L. c. 40, § 6, could not be pronounced illegal, it not appearing to have resulted from a condition arising through any want of good faith or any purpose to circumvent the intention of the voters in making the appropriations or passing the votes.

BILL IN EQUITY, filed in the Superior Court on June 24, 1926, by sixteen taxable inhabitants of the town of Billerica under G. L. c. 40, § 53.

The suit was referred to a master and then was heard by *Brown,* J., upon the pleadings and the master's report and exceptions thereto. Exceptions by the defendants to findings by the master that the plaintiffs were not guilty of laches were sustained, the plaintiffs were found guilty of laches, and a final decree was entered dismissing the bill. Both the plaintiffs and the defendants appealed.

Proceedings in this court respecting an amendment to the defendants' answers are described in the opinion.

*R. B. Walsh,* for the defendants selectmen of Billerica and others.

*W. R. Bigelow,* for the defendant corporation.

*J. P. Donahue,* (*G. F. Toye* with him,) for the plaintiffs.

RUGG, C.J.   This is a suit in equity brought under G. L. c. 40, § 53, by taxable inhabitants of the town of Billerica to enjoin the payment of money from the treasury of that town upon a contract alleged to be illegal.   The case was sent to a master.   A decree was entered in the Superior Court dismissing the bill.   The plaintiffs appealed.   When the case came on to be argued at the bar of this court, the defendants offered for filing an amendment to their answer setting up that, subsequently to the hearing before the master, the contract had been ratified by the town at a legal town meeting by vote passed pursuant to a sufficient article in the warrant.   This amendment was in proper form.   It was designed to invoke a defence occurring since entry of the final decree.   In point of substance the motion to amend the answer is proper.   It naturally would be allowed, if offered in the trial court, as enabling the court to adapt the final disposition of the case to the facts then existing.   *Day* v. *Mills,* 213 Mass. 585, 587.   *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 9.   *Ensign* v. *Faxon,* 229 Mass. 231, 233.   *Boston & Maine Railroad* v. *Cate,* 254 Mass. 248, 250.   Equity Rule 6 (1926).

The amendment was offered at the argument before us under G. L. c. 231, § 125, whereby all powers of amendment possessed by the court below are conferred upon the full court.   This power will not be exerted save in instances where justice seems to require it.   The plaintiffs object to the allowance of the amendment but do not dispute the facts set up in the proposed amendment.   If the case should be decided here adversely to the defendants, they could offer the same amendment to the answer in the Superior Court after rescript and before final decree, and under the authority of the decisions already cited it well might be allowed and become the basis of the final decree, and thus all that had been decided on the appeal would go for naught so far as concerns the ultimate rights of the parties.   It seems a

wiser administration of justice to act under G. L. c. 231, § 125, and consider the matter at once. The motion to amend the answer is allowed.

The salient allegations in the bill are that the town of Billerica at a town meeting authorized general repairs to be done on designated portions of three separate roads, made a certain and separate appropriation for each of the three roads, and that thereby under G. L. c. 41, § 62, the highway surveyor alone became and was authorized and required to make the repairs and to expend the money appropriated therefor; that the selectmen without authority in law contracted with one of the defendants to make repairs on the three roads for a gross sum without specification as to the amount to be expended on each piece of road; that the contract price exceeded the appropriations available; that the portions of the three roads described in the contract were not in accordance with the votes of the town; that hence the contract was illegal and that the moneys of the town could not lawfully be expended in payment for its performance. The answers of the defendants raised somewhat complicated issues of fact and of law as to each of these allegations, respecting which the master has made report.

The contract was made on June 11, 1926; work was begun under it on June 15 and continued through June 28, when it ceased presumably because of this litigation. Hearings were had before the master, and his report was filed on October 28, 1926. Hearing was had in the Superior Court and final decree entered on January 28, 1927. The appeal was seasonably taken and prosecuted. In this state of affairs a town meeting was held on June 1, 1927. An article in the warrant for that meeting was, "To see (1) whether the Town will vote to ratify the contract dated June 11, 1926, entered into between the Town, acting through its Board of Selectmen for the time being, and the Framingham Construction and Supply Co., for the reconstruction of portions of Concord Road, River Street and Mt. Pleasant Street"; (2) whether after ratification the town would rescind the contract and authorize settlement with the contractor; (3) whether after such rescission the town would authorize the

three particular road repairs authorized by votes under specified articles of the town meeting of 1926, to be done under the direction of the highway surveyor; (4) whether the town would take further action touching the matter. When this article was under consideration at the town meeting, it was voted "that the Town ratify the contract dated June 11, 1926 entered into between the Town, acting through its Board of Selectmen for the time being, and the Framingham Construction and Supply Co. for the reconstruction of the portions of Concord Road, River Street, and Mt. Pleasant Street." Further paragraphs of the vote deal with the other paragraphs of the article and are more or less conditional in their effect. Under subdivision (4) it was voted that the votes under subdivisions (2) and (3) should not become effective "until the termination of the litigation now pending concerning said contract or upon the dissolution of the injunction issued in said litigation." It is not necessary to consider in detail the other parts of the vote or to pass upon their effect or validity, because the vote to ratify the contract stands by itself and is not dependent upon any subsequent votes. It is separate and distinct from what follows. It is direct, clear and unmistakable in its terms. It is positive and without qualification in its scope.

The article in the warrant was sufficient to present the subject fully to the town. In order that a vote of that nature may constitute a ratification, "it must appear that the town had full knowledge of all the essential facts concerning the transaction to which the vote relates. *Dickinson* v. *Conway*, 12 Allen, 487. *Brown* v. *Melrose*, 155 Mass. 587." *Meader* v. *West Newbury*, 256 Mass. 37, 40. The article and the votes disclose the date and subject matter of the contract, the parties to the contract and the officers who undertook to make it on the part of the town, the fact that there was pending litigation concerning it, and by inference that the highway surveyor claimed the right to do the work. It would be difficult to conceive a case where there would be disclosed on the records of the town greater knowledge of essential facts.

The circumstance that the vote of ratification was passed

at a special instead of at the annual town meeting is of no consequence. *Moloney* v. *Selectmen of Milford,* 253 Mass. 400, 403. *Adams* v. *Townsend Schoolhouse Building Committee,* 245 Mass. 543, 547.

Even if it be assumed that the duty of making the repairs voted was vested by law in the highway surveyor in the absence of a special vote empowering the selectmen to make a contract therefor, nevertheless the town might ratify a contract for those repairs executed in its behalf by the selectmen. G. L. c. 84, § 7. *Hawks* v. *Charlemont,* 107 Mass. 414. Subsequent ratification was the equivalent of original authority. *Emerson* v. *Newbury,* 13 Pick. 377, 379.

It is contended that the contract was invalid and illegal and hence not capable of ratification. One ground upon which that contention is based is that the town voted under three separate articles in the warrant that certain definite work be done on three separate pieces of road, and voted a separate and specific appropriation for each of these three pieces of road, and that the contract, while it specified the three separate pieces of road, did not specify the amounts to be expended on each but simply stipulated a gross price. Upon this point the master found: "No separation of the work to be done or the cost thereof for each of said roads is made in said contract to correspond with the three votes passed by the town of Billerica at its annual town meeting, and it is not possible to determine by the terms of said contract exactly what proportion of the total contract price is to be allocated to each of said three roads. The distances on each road to be surfaced, however, as called for by the contract were inserted therein upon the estimate that such distance could be done with the appropriation for such road." In order to conform to the vote of the town, the amount to be expended on each road should have been stipulated in the contract in accordance with, or not in excess of, the appropriation made for each; and the length of road to be repaired should have been stated in approximate conformity to that given in the votes. The votes of the town specifying the roads and making the appropriations, however, were

public records open to the examination of any interested person. The contract could go no further than the votes. The specific appropriations made by votes of the town limited the authority of all attempting to act as agents in behalf of the town and limited also the rights of all persons dealing with the town. The contractor could not under the contract do work in excess of the appropriation on one road and less than that appropriated on another and collect the deficiency on the one out of the surplus on the other. The contractor was strictly bound by the amounts of the appropriations in fact made for each road, although not specified in the contract. The contractor could collect for work on each road nothing in excess of the amount appropriated for that road by vote of the town, and must do substantially the work called for in the vote in order to recover. *Boston Electric Co.* v. *Cambridge,* 163 Mass. 64. *Simpson* v. *Marlborough,* 236 Mass. 210, 213. *Conners* v. *Lowell,* 246 Mass. 279. The contract, while imperfect, was not illegal. It was susceptible of ratification by vote of the town. *Sylvester* v. *Webb,* 179 Mass. 236. The vote of ratification in this particular is subject to the inherent limitations of the contract. The town has not revoked or changed its votes as to the separate appropriations for each of the three pieces of road. The town and the contractor are bound by those limitations, although they are not specified in the contract and do not appear except by reference to the original votes of the town. The vote of ratification went no further than the contract. There must be read into the contract each of the special appropriations for the particular road for which it was made by the vote of the town, and the total contract price is to be allocated accordingly. The ratification is subject to the same implications. Our statutes governing the making of appropriations and the incurring of indebtedness by towns, as well as the subject matter involved, distinguish the case at bar from cases like *Devlin* v. *Jersey City,* 90 N. J. L. 318, *Alberger* v. *Mayor & City Council of Baltimore,* 64 Md. 1, 8, *In re Ingraham,* 64 N. Y. 310, and *Abbot* v. *Milwaukee,* 148 Wis. 22.

Another ground upon which is based the contention that the contract was illegal and not capable of ratification is that the price named therein was in excess of the appropriation, G. L. c. 44, § 2, and subjected the officers executing it to criminal penalty under St. 1922, c. 253. The original appropriations made by the town, when added, were sufficient in amount to meet the price stipulated in the contract. By mistake, or under some misapprehension, a payment had been made out of one of these appropriations instead of out of the general appropriation for highways, so that, when the contract came to be made, it was discovered that there was not quite enough in the available appropriations to equal the contract price. Thereupon, in response to request by the selectmen, the finance committee of the town before the execution of the contract voted to transfer a sum sufficient to cover this shortage from the reserve fund to the particular special appropriation. This transfer cannot be pronounced illegal. It is provided by G. L. c. 40, § 6, that "To provide for extraordinary or unforeseen expenditures" a limited sum, to be known as the reserve fund, may be established, and that "No direct drafts against this fund shall be made, but transfers from the fund may . . . be voted by the finance . . . committee of the town." There was a finance committee of the town of Billerica. This charge against the appropriation was a condition unforeseen at the time the appropriations were made. It did not arise through any want of good faith or any purpose to circumvent the intention of the voters in making the appropriations or passing the votes. If it be assumed that the payments from this special appropriation were made through oversight by some town officials, the finance committee, acting on their official responsibility, must have decided that an extraordinary or unforeseen expenditure had been made out of this appropriation before making the transfer. The members of that committee are not parties to the present proceeding. On this record it cannot be pronounced as matter of law that the aggregate of the three appropriations did not equal the contract price.

The vote of ratification did not purport to go further than to remedy the lack of authority of the selectmen in attempt-

ing to make the contract. Thus ratified, the contract as supplemented by the votes of the town relating to the subject matter, and as here interpreted, bound the town to the extent authorized by the votes.

*Decree affirmed.*