G. M. BRYNE COMPANY *vs.* TOWN OF BARNSTABLE.

Suffolk.   May 13, 1932. — May 29, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Contract*, Construction, Validity, Of municipal corporation, Modification, Building contract.   *Municipal Corporations*, Municipal finances, Officers and agents, Contracts, Bridge in public way.

A town may authorize a special committee to make a contract in behalf of the town for the building of a bridge to replace an existing bridge forming part of a public way in the town.

A vote of a town, appointing certain persons a committee "to act . . . in building . . . [a certain] bridge," impliedly gave the committee authority to make in behalf of the town the necessary contracts for that purpose.

Neither a vote by a town at a meeting, merely authorizing the borrowing of a certain sum of money for the purpose of building a bridge and appointing a special committee to build the bridge, nor a vote at a subsequent meeting, accepting a report by the committee, in which the committee stated that a contract for building the bridge had been made and described the progress of the work, and declaring it to be "the sense of this meeting that the committee proceed to have the bridge completed," purported to limit the amount of the expenditures by the committee to the sum so appropriated.

A vote by such town at a meeting subsequent to the two meetings above described, to borrow a certain sum "for the purpose of completing"

the bridge, even if it was intended to limit the amount to be expended for the bridge, could not affect the liability already incurred lawfully by the town under the contract so made by the committee.

No statute in force in 1911 and 1912 prohibited a special committee, appointed by a town "to act . . . in building" a bridge to replace an existing bridge forming part of a public way, from incurring, under a construction contract made for that purpose, liability in behalf of the town in excess of a sum appropriated by the town for that purpose by a vote which did not limit the amount of the expenditures by the committee to such sum.

Section 1 of R. L. c. 27 was not applicable to limit the liability of the town under such construction contract to the amount of such appropriation, even though the sum appropriated was raised by borrowing.

A town cannot escape liability under a contract legally made in its behalf by failing to make a sufficient appropriation to discharge such liability.

Where a special committee, appointed by a town to build a bridge to replace an existing bridge forming part of a public way and authorized by the town to contract in its behalf for that purpose, and not prohibited by any vote of the town or any statute in force at the time in question from incurring liability in behalf of the town in excess of the sum appropriated by the town for the bridge, made in behalf of the town a contract for the construction of the bridge, under which contract the contractor properly did work entitling him by its terms to a total sum in excess of such appropriation, it was proper, in an action by him against the town, to refuse to rule that he could not recover more than the unexpended balance of the appropriation; and he was entitled to recover the entire unpaid portion of the total sum earned by him.

A town by a vote appointed a special committee to build a bridge. The committee thereafter made, in behalf of the town, a construction contract in writing, which provided for the contractor's doing extra work and being paid therefor by the town at a specified rate, but only upon orders in writing by the town's engineer. Orders of such character were not required to be in writing by any statute or vote of the town. Thereafter the special committee orally instructed the contractor to do extra work without orders in writing by the engineer and promised that the town would pay for it; and the engineer subsequently gave oral orders for certain extra work, which was performed by the contractor. In an action by the contractor against the town to recover for such extra work, it was *held*, that

(1) The original contract in writing could be modified by a subsequent oral agreement if the town in making such agreement acted through authorized agents;

(2) The doing of the extra work by the contractor was sufficient consideration to support such oral agreement;

(3) The authority of the special committee to contract in behalf of the town in connection with the building of the bridge, which was granted impliedly by the vote of the town, was not exhausted, in the circumstances, when the original contract was made; there was nothing to show that the authority of the committee did not extend

to the making of reasonable modifications of the original contract in order to accomplish the purpose for which the committee was appointed;

(4) It could not be said as a matter of law that the modification so made was not reasonable;

(5) The plaintiff was entitled to recover.

CONTRACT. Writ dated March 25, 1913.

In the Superior Court, the action was referred to an auditor and afterwards was tried before *C. H. Donahue*, J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $21,414, of which the plaintiff subsequently remitted all in excess of $14,549.36. Both parties alleged exceptions.

The case was argued on May 13, 1932, before *Rugg*, C.J., *Wait, Sanderson & Field*, JJ., *Donahue*, J., not participating in its consideration or determination by reason of the fact that the rulings being reviewed were made by him when a member of the Superior Court. By reason of the death of *Sanderson*, J., and a disabling illness of *Wait*, J., before the case could be determined, the case was further considered and was determined by *Rugg*, C.J., *Crosby, Pierce, Field, & Lummus*, JJ.

*F. P. Garland*, (*Joseph P. Sullivan* with him,) for the defendant.

*L. A. Mayberry*, (*H. L. Barrett* with him,) for the plaintiff.

FIELD, J. This is an action of contract to recover from the defendant town compensation for building a bridge. The declaration as amended is in five counts — the first on a written contract dated May 15, 1911, the second, third and fourth each on an account annexed, and the fifth on an express contract alleging that on or about May 15, 1911, the plaintiff entered into a written contract with the defendant; "that immediately thereafter it commenced the construction of the bridge in accordance with the terms of said contract and with specifications and the plans accompanying the same; that thereafter by agreement of the parties said contract was modified in certain respects so as to provide among other things that the plaintiff should proceed with changes in and additions to said work

without waiting for written orders in accordance with the terms of said written contract, and that any increased cost incurred by the plaintiff by reason thereof should be paid by the defendant plus fifteen per cent." The case was heard by an auditor, who filed a report. Thereafter it was tried before a judge and a jury on the auditor's report and other evidence. The plaintiff waived the third and fourth counts of its declaration and the judge directed a verdict for the defendant on the second count. The defendant admitted that the plaintiff was entitled to recover the sum of $2,976.61 under the original contract, but did not admit that the plaintiff was entitled to recover any amount on the fifth count. The judge, subject to the plaintiff's exception, required the plaintiff to elect on which count it would go to the jury and it elected to go to the jury on the fifth count. The defendant's motion for a directed verdict was denied and the defendant excepted. The defendant also excepted to the refusal of the judge to make certain requested rulings and to portions of the charge. And the plaintiff excepted to the exclusion of certain evidence, to the refusal of the judge to make certain requested rulings, to certain rulings made at the request of the defendant and to portions of the charge. There was a verdict for the plaintiff on the fifth count which, after a part of the amount thereof was remitted, stood for the sum of $14,549.36.

The written contract of May 15, 1911, including plans, specifications and "proposal sheet" which were a part of it, was in evidence. It provided that the work should be completed on or before October 15, 1911. The contract price fixed thereby was $12,750 with a further provision for payment for "extra work or materials, if any, performed or furnished" in accordance with art. 5 of the contract, "the reasonable cost of the work or materials as determined by the Engineer plus fifteen percentum (15%) of such cost." Said art. 5 is as follows: "The Engineer may at any time make such changes in the amount of any of the descriptions of work to be done, or in the quality of the material to be used, as the interests of the work or of the Town may in his opinion require. If any such

changes should diminish the quantity of work to be done, they shall not constitute a claim for damages or for anticipated profits on the work that may be so dispensed with. If the amount of work shall be increased by the enlargement of any part of the same or by any contingent work which the Engineer may deem necessary to facilitate its execution or render it in any particular conformable to local circumstances, or which may be deemed by the Engineer necessary for perfecting the work beyond what is provided for in this agreement, or if such work is not similar to work herein contracted for, it shall be paid for as extra work at the rate named in the proposal sheet attached hereto and made a part of this contract. But it is distinctly understood and agreed that no such changes shall be made except upon the written order of the Engineer. And the Contractor hereby expressly covenants and agrees that he will not, under any circumstances, or for any reason whatsoever, make any such changes unless and until so specified and set forth in writing. And the Contractor further hereby expressly covenants and agrees that he will not, under any circumstances or for any reason whatsoever, make any claim or demand for any extra compensation in excess of the prices named in this agreement, excepting such compensation as may be specified for extra work performed as provided for in this paragraph. And the Contractor is hereby absolutely prohibited from doing any work or furnishing any material, for which he will demand extra compensation in excess of that provided for in this contract, or in any other way departing or varying from the provisions hereof, or from said plans and specifications, upon any order or request, whether verbal or in writing, given by any Assistant Engineer, Inspector, or any other Employee or Agent of the Town."

There was evidence that the payments by the defendant to the plaintiff aggregated $14,578.75. It was agreed "that the bridge was completed and accepted by the town about August 10, 1912," and "that the final estimate and certificate of the engineer [for which provision was made in the contract] showed there was a balance of

$2,976.61 due from the defendant to the plaintiff and un-
paid consisting of $1,413.13 admittedly due on the original
contract of $12,750 and $1,563.48 admittedly due for
extras." The votes of the town in regard to building the
bridge were as follows: At a town meeting on March 7,
1911, the town voted "unanimously to issue notes, bonds
or script of the Town for $14,000, for the purpose of build-
ing a concrete bridge in the Village of Osterville, known
as the Grand Island Bridge, and that a committee of three
be appointed to act with the surveyors of highways in
building said bridge. The following are appointed as a
committee to act with the surveyors of highways: E. S.
Crocker, James Bearse and John Bursley." At a town
meeting on March 5, 1912, a report was made by the bridge
committee, and accepted by the town, containing the fol-
lowing statements: "It was finally decided by the Board
of Harbor and Land Commissioners that they would not
authorize a bridge having less than a 10-feet clearance
under the drawway. Plans for the bridge with this clear-
ance were then prepared by the engineer, and bids were
first opened April 29, 1911. Two bids only were submitted
in this instance, the lower being $16,000, which was $2,000
more than the amount appropriated for the work. The
plans were then somewhat modified and new bids were
called for, which were opened on May 13, 1911. The
lowest bid submitted at this opening was that of George
M. Bryne Company of Boston, who offered to build the
bridge complete for $12,750. The bids ranged from this
figure up to $23,000. The contract was awarded to the
lowest bidder and actual work on the new bridge was
started in June, 1911. The work progressed slowly from
that date, and on August 29, 1911, the contractor discon-
tinued active work on the bridge, and your committee has
been unable to find any satisfactory reason for such dis-
continuance. Your committee had hoped that the con-
tractor would resume operation within a reasonable length
of time in order that the structure might be completed at
the date named in the contract, namely, October 15, 1911.
Work, however, has not been resumed up to the present

time, and the bridge is now about one-third completed, the substructure being practically complete. Your committee has availed itself of the advice of the Town counsel. In the opinion of your committee the contractor is at fault in not completing the work and in not complying with the terms of the contract." It was voted "that it be the sense of this meeting that the committee proceed to have the bridge completed." At a town meeting on July 30, 1912, it was voted that "the Town borrow the sum of $3,250 for the purpose of completing the new Grand Island Bridge, so-called, in the Village of Osterville, and that the Treasurer with the approval of at least a majority of the Board of Selectmen, is hereby authorized to issue a note or notes of the Town therefor. All notes so issued shall be payable during the year 1913. The interest rate and all other details to be at the discretion of the Treasurer and Board of Selectmen. The vote was Yes 23; No 9."

The defendant's contentions on its bill of exceptions are that the judge erred (a) in refusing to rule that the plaintiff could not recover more than the unexpended balance of the appropriations made by the town for doing the work, (b) in refusing to rule that the plaintiff could not recover payment for work alleged to have been done as extra work unless such work was performed as extra work upon the written order of the engineer, and (c) in refusing to direct a verdict for the defendant on the fifth count of the plaintiff's declaration. The defendant's exceptions which are not covered by these contentions have not been argued and are treated as waived.

1. The judge did not err in refusing to rule that the plaintiff could not recover more than the unexpended balance of the appropriations made by the town for doing the work.

There is no contention that the building of the bridge was not within the corporate powers of the town — for the purpose of replacing an existing bridge constituting a part of a public way — which, by vote of the town, could be exercised through a committee acting as an agent of the town, and not as a board of public officers, if the laws

governing the exercise of such powers were complied with. See R. L. c. 25, §§ 14, 15; c. 51, §§ 1, 13, 23. *Simonds* v. *Heard,* 23 Pick. 120. *Hawks* v. *Charlemont,* 107 Mass. 414. *Shea* v. *Milford,* 145 Mass. 528. *Bigelow* v. *City Council of Worcester,* 169 Mass. 390, 393. *Twombly* v. *Selectmen of Billerica,* 262 Mass. 214, 219. The town could authorize such committee to enter into contracts. R. L. c. 51, § 13. The vote of the town on March 7, 1911, "that a committee of three be appointed to act with the surveyors of highways in building said bridge," and the appointment of three persons in accordance therewith, constituted the persons so appointed, together with the surveyors of highways, a committee to act as agent of the town for the purpose of building the bridge. Though the bridge committee so constituted was not expressly authorized to make contracts for building the bridge, the vote authorizing the building of the bridge carried with it "an implied authority to make the necessary contracts for that purpose." *Simonds* v. *Heard,* 23 Pick. 120, 124–125. See *Damon* v. *Granby,* 2 Pick. 345; *Friend* v. *Gilbert,* 108 Mass. 408, 411; *Shea* v. *Milford,* 145 Mass. 528. And the town concedes liability under the written contract made by the bridge committee, but contends that its liability is limited to amounts which the town voted to appropriate (or borrow) for building the bridge. Whether the town's liability is so limited depends upon the votes of the town and the applicable statutes.

The vote of the town on March 7, 1911, did not limit the amount to be expended by the bridge committee to the amount therein referred to. There was no such express restriction of cost to a specified amount as in *Nelson* v. *Georgetown,* 190 Mass. 225, and in *Vinal* v. *Nahant,* 232 Mass. 412, 420–421. The vote dealt with two distinct matters, (a) raising money by issuing "notes, bonds or script of the Town for $14,000" for building the bridge, and (b) authorizing agents of the town to build such bridge. But it is not implied that the amount of money authorized to be raised in this manner under the first part of the vote is the limit of authorized expenditure under the second part of the vote. The vote in this respect cannot be distin-

guished from the votes in *Shea* v. *Milford*, 145 Mass. 528. In that case a committee appointed by a town made recommendations for the location of a memorial hall and the plan and specifications to be followed, and "reported that the price should not exceed $20,000." The town passed the following votes: "Voted, that the report and plans of the Memorial Hall committee be adopted. Amended: also location adopted. Also that the same committee locate and build the same. Voted, that, for the purpose of building a Memorial Hall, we raise by taxation the sum of $2,000, and the town borrow the sum of $20,000, payable in equal instalments of $5,000, in one, two, three, and four years." Pages 529, 530. The court held that the vote adopting the report of the committee was not a vote that the expenditure should be limited to $20,000, and with respect to the argument that "the committee could not make any contract which involved an expenditure in excess of the whole amount appropriated by the town, $22,000," said: "The vote does not expressly prohibit the committee from incurring liabilities beyond the amount of the appropriation, and we do not think that such prohibition can be implied. While it was probably intended to make an appropriation large enough to cover the contract price and such 'extra work' as would be likely to be required, there seems to be no prohibition against contracting for 'extra work' beyond the amount of the appropriation, if circumstances should justify and require it." Pages 531–532. See also *Webb Granite & Construction Co.* v. *Worcester*, 187 Mass. 385, 390.

The vote of the town on March 5, 1912, did not purport to limit the amount which the bridge committee could expend under the previous vote, and the vote of the town on July 30, 1912, to borrow money "for the purpose of completing" the bridge, even if intended to limit expenditures on the bridge, could not affect liabilities already lawfully incurred.

A town cannot escape liability under a contract legally made by failing to make a sufficient appropriation to meet the requirements thereof. And no statute in force during

the period here in question prohibited the bridge committee, acting within the terms of the votes of the town, from incurring liability in excess of the amounts appropriated (or borrowed) for building the bridge. See *Hunneman* v. *Grafton*, 10 Met. 454, 457; *Shea* v. *Milford*, 145 Mass. 528; *Costello* v. *North Easton Village District*, 205 Mass. 54, 58; *Blaisdell* v. *York*, 110 Maine, 500, 518–519. In this respect the case differs from *Adams* v. *County of Essex*, 205 Mass. 189, *Twombly* v. *Selectmen of Billerica*, 262 Mass. 214, *Dyer* v. *Boston*, 272 Mass. 265, and similar cases. The statute providing that no department of a town "shall incur liability in excess of the appropriation made for the use of such department," except in cases of extreme emergency (St. 1913, c. 719, § 16, now G. L. [Ter. Ed.] c. 44, § 31), did not take effect until January 1, 1914.

The defendant, however, relies on R. L. c. 27, § 1, in force during 1911 and 1912, providing that "Cities and towns shall not incur debts, except in the manner of voting and within the limitations as to amount and time of payment prescribed in this chapter," as limiting the authority of the bridge committee to incur debts for the construction of the bridge to amounts appropriated therefor. We need not consider whether the statute can be so interpreted with respect to debts to which it is applicable, for it does not apply to the liability of the defendant to the plaintiff under the contract. R. L. c. 27, § 20, provides that "The restrictions of the preceding sections shall not exempt a city or town from its liability to pay debts contracted for purposes for which it may lawfully expend money." And it was said in *Smith* v. *Dedham*, 144 Mass. 177, 179, that "although the statute was prohibitory with reference to the borrowing of money and the contracting of debts, it was not intended to interfere with the limited corporate powers and duties of cities and towns. . . . They are authorized to make contracts necessary and convenient for the exercise of their corporate powers, without bringing themselves within the limitation of this statute." See also *Agawam National Bank* v. *South Hadley*, 128 Mass. 503, 505. Building the bridge was a purpose for which the town

could "lawfully expend money" within the meaning of the statute. Compare *Smith* v. *Dedham*, 144 Mass. 177, 180. The bridge was built in pursuance of the statutory duties of the town to keep in repair at its expense "Highways, town ways, causeways and bridges." R. L. c. 51, § 1. And an appropriation therefor could have been made under the express statutory authority to appropriate money for the purpose of "making, altering and repairing highways and town ways." R. L. c. 25, § 15. The contract by its terms was to be performed in the year in which it was made. As between the plaintiff and the defendant the debt created by the contract was an obligation "for current expenses, payable out of current revenues," unless otherwise discharged. Compare *Municipal Signal Co.* v. *Holyoke*, 168 Mass. 44.

2. The judge did not err in refusing to rule that the plaintiff could not recover payment for work alleged to have been done as extra work, unless such work was performed as extra work upon the written order of the engineer.

The provisions of art. 5 of the written contract with regard to extra work preclude recovery by the plaintiff for extra work not performed upon the written order of the engineer, unless the contract in this respect was modified by the parties. It could have been found, however, that the written contract was so modified by an oral agreement. Such a modification ordinarily can be made by an oral agreement (*Bartlett* v. *Stanchfield*, 148 Mass. 394, *Zarthar* v. *Saliba*, 282 Mass. 558, 560, and cases cited), and this is true where one of the parties to the written contract is a town, if the town acts by a duly authorized agent. *McGovern* v. *Salem*, 214 Mass. 358, 362–363. Here there was evidence warranting a finding that the bridge committee gave the plaintiff oral instructions to make changes in the work described in the plans and specifications without written orders of the engineer, as required by art. 5 of the written contract, and promised that the town would pay the additional cost of such work, and a finding that oral orders were given by the engineer and carried out by

the plaintiff. The doing of such work would constitute sufficient consideration for a modification by oral agreement of the written contract. *Bartlett* v. *Stanchfield*, 148 Mass. 394, 396. See also *Rowe* v. *Peabody*, 207 Mass. 226, 234–235.

The bridge committee was authorized by the town to modify the written contract by an oral agreement to the extent at least of substituting oral for written orders for changes in the work. Even where a committee is required to make a single contract for the whole work according to certain plans and specifications, the committee has "authority to add to or to change the specifications in order to remedy defects in them, and to improve them in minor details, within reasonable limits." *Shea* v. *Milford*, 145 Mass. 528, 531. See *Morse* v. *Boston*, 253 Mass. 247, 253. Here the authority of the bridge committee was not limited to contracting for building the bridge either by a single contract for the whole work or by several contracts. This committee was authorized to build the bridge and impliedly to make any necessary contracts for that purpose. Its power to contract, therefore, was not exhausted when it made a contract, or contracts, for the whole work. Compare *Friend* v. *Gilbert*, 108 Mass. 408, 411. In this respect the case is distinguishable from *Keyes* v. *Westford*, 17 Pick. 273, and from *Boston Electric Co.* v. *Cambridge*, 163 Mass. 64. There is nothing in the vote of the town authorizing the committee to build the bridge which raises an implication that the power of such committee did not extend to modifications of the contract which were reasonably adapted to the exercise of the powers conferred by the town on the committee. "As a broad proposition, the power of a municipality to modify a public improvement contract is lodged in the principal or officer authorized to make the contract. . . . Such modifications, it is safe to assume, may be lawfully made when required by an exigency to meet a situation in the nature and progress of the work, that was neither understood nor contemplated when the contract was made." *Atlantic City* v. *Warren Bros. Co.* 226 Fed. Rep. 372, 382. It cannot be said as matter of

law that a modification of the written contract so as to authorize the performance of extra work upon oral orders of the engineer — when written orders were not required by statute or by vote of the town — was not reasonably adapted to the exercise of the powers conferred on the bridge committee.

3. The judge did not err in refusing to direct a verdict for the defendant on the fifth count of the plaintiff's declaration.

The defendant's contention is, in substance, that, though the plaintiff on proper allegations could recover the sum of $2,976.61, it cannot recover any amount on the fifth count of the declaration, for the reason that the evidence does not support the allegations of that count with respect to a modification of the written contract, and that, consequently, there is a variance between the allegations and the proof. This contention is disposed of by the preceding consideration of the other contentions of the defendant. It could not have been ruled that the evidence did not warrant a verdict for the plaintiff on the fifth count of the declaration.

It follows that the defendant's exceptions must be overruled. Since the plaintiff states that if the defendant's exceptions are overruled it does not insist upon its own exceptions, those exceptions are overruled.

*So ordered.*